**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 6, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

R-S-C,

     Petitioner,

v.

JEFFERSON B. SESSIONS, III,
United States Attorney General,[*]

     Respondent.

-------------------------------------------

AMERICAN IMMIGRATION
LAWYERS ASSOCIATION;
NATIONAL IMMIGRANT JUSTICE
CENTER,

     Amici Curiae.
_____

No. 15-9572

**Petition for Review from the Board of Immigration Appeals**
_____

Maria E. Andrade, Andrade Legal, Boise, Idaho, for Petitioner.

Corey L. Farrell, Trial Attorney (Benjamin C. Mizer, Principal Deputy Assistant
Attorney General, and Terri J. Scadron, Assistant Director, with him on the briefs),
Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington
D.C., for Respondent.

_____

[*] Pursuant to Fed. R. App. P. 43(c)(2), Jefferson B. Sessions, III, replaces
Loretta Lynch as the United States Attorney General.

Mark Barr, Lichter Immigration, Denver, Colorado, Charles Roth and Zeren Zwick, National Immigrant Justice Center, Chicago, Illinois, filed a for Amici Curiae.

_____

Before **EBEL** and **LUCERO**, Circuit Judges.[1]

_____

**EBEL**, Circuit Judge.

_____

There is an apparent conflict, which is squarely presented in this case, between two provisions of the Immigration and Nationality Act (INA).  The asylum section provides that "[*a*]*ny alien . . .* , irrespective of such alien's status, *may apply for asylum*[.]"  8 U.S.C. § 1158(a)(1) (emphasis added).  By contrast, the reinstatement provision mandates that a previously deported alien who illegally reenters the United States will have his prior removal order reinstated and "is *not eligible* and *may not apply for any relief . . . .*"  Id. § 1231(a)(5) (emphasis added).  Tasked with administering these provisions, the Attorney General has determined that the latter subsection prevails—an illegal reentrant with a reinstated removal order is not eligible for asylum relief.  8 C.F.R. § 1208.31(e), (g)(2)(i).

R-S-C illegally reentered the United States after having been removed and her prior removal order was reinstated, thus under the Attorney General's interpretation of the INA, she cannot apply for asylum.  She now challenges the Attorney General's

---

[1]  The Honorable Neil Gorsuch participated in the oral argument but not in the decision, in this case. The practice of this Court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal.  See 28 U.S.C. § 46(d); see also United States v. Wiles, 106 F.3d 1516, 1516, n* (10th Cir. 1997) (noting that this Court allows remaining panel judges to act as a quorum to resolve an appeal).  In this case, the two remaining panel members are in agreement.

regulations as inconsistent with the INA's asylum guarantee. We conclude that Congress has not clearly expressed whether aliens governed by the reinstatement provision may apply for asylum. However, the Attorney General's regulations are consistent with a reasonable interpretation of the statutory scheme, so they are entitled to administrative deference. Accordingly, we DENY the petition for review.

## I. BACKGROUND

### A. Legal Background

#### 1. International Agreements and Statutes

The United States has acceded to, and agreed to be bound by, the 1951 U.N. Convention Relating to the Status of Refugees (Refugee Convention), 189 U.N.T.S. 150 (July 28, 1951). See 1967 Protocol Relating to the Status of Refugees, 19 U.S.T. 6223 (Nov. 6, 1968); INS v. Cardoza-Fonseca, 480 U.S. 421, 429 (1987). The Refugee Convention contains two principles relevant to this case. First, Article 33.1 provides that "[n]o Contracting State shall expel or return ('refouler') a refugee . . . where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion." 19 U.S.T. at 6267 (emphasis added). This prohibition on deporting aliens to a country of risk is known as the "nonrefoulement" principle. Cardoza-Fonseca, 480 U.S. at 440. Second, Article 34 states that "[t]he Contracting States shall as far as possible facilitate the assimilation and naturalization of refugees." Id. (emphasis added).

3

Congress imbued these international commitments with the force of law when it enacted the Refugee Act of 1980 (Refugee Act), Pub. L. 96-212, 94 Stat. 102-18, which amended the INA in certain respects. The Refugee Act prohibited the Attorney General from deporting any alien to a country if such deportation would endanger that alien's life or freedom based on certain characteristics of the alien. Id. § 203(e), 94 Stat. 107. In addition, the Refugee Act also directed the Attorney General to "establish a procedure for an alien . . . irrespective of such alien's status, to apply for asylum." Id. § 201(b), 94 Stat. 105. Whether the alien ultimately received asylum was a discretionary decision entrusted to the Attorney General. Id.; see also Cardoza-Fonseca, 480 U.S. at 428 n.5.

Congress then passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, 110 Stat. 3009 (codified as amended in scattered sections of 8 U.S.C.), which refashioned the above principles into their current form. As for nonrefoulement, the statute now provides that "the Attorney General *may not remove an alien* to a country if the Attorney General decides that *the alien's life or freedom would be threatened* in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A) (emphasis added). The implementing regulations refer to this prohibition as "withholding of removal." 8 C.F.R. § 1208.16.

IIRIRA also revised the asylum section of the INA, which now provides that "[*a*]*ny alien* who is physically present in the United States or who arrives in the United States . . . , *irrespective of such alien's status*, may apply for asylum in

4

accordance with [section 1158] . . . ." 8 U.S.C. § 1158(a)(1) (emphasis added).

Section 1158 further states that "the Attorney General *may* grant asylum to an alien,"

§ 1158(b)(1)(A) (emphasis added), except in certain enumerated circumstances,

§ 1158(b)(2)(A). Thus, as it was in the Refugee Act, the determination of whether an

eligible applicant actually receives asylum is within the discretion of the Attorney

General. Id.; see also INS v. Aguirre-Aguirre, 526 U.S. 415, 420 (1999) ("[W]hereas

withholding is mandatory . . . , the decision whether asylum should be granted to an

eligible alien is committed to the Attorney General's discretion."). Finally, the

asylum section provides that "[t]he Attorney General may by regulation *establish*

*additional limitations* and conditions, consistent with [section 1158], under which an

alien shall be ineligible for asylum . . . ." § 1158(b)(2)(C) (emphasis added).

IIRIRA also addressed a separate issue altogether, which is at the heart of this

case: reinstatement of previous removal orders. Congress was frustrated with

existing procedures for deporting aliens who repeatedly re-entered the United States

unlawfully.[2] In order to expedite the removal process for these repeat offenders and

deter illegal reentry, Congress mandated:

> If the Attorney General finds that an alien *has reentered the*
> *United States illegally* after having been removed . . . under an
> order of removal, the prior order of removal is reinstated . . .
> and is not subject to being reopened or reviewed, *the alien is*
> *not eligible and may not apply for any relief* under this

---

[2] H.R. Rep. No. 104-469(I), at 107, available at 1996 WL 168955 ("Existing procedures to deny entry to and to remove illegal aliens from the United States are cumbersome and duplicative."); id. at 155 ("[T]he ability to cross into the United States over and over with no consequences undermines the credibility of our efforts to secure the border.").

5

> chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).  In interpreting this reinstatement provision, the Supreme Court explained that it "applies to all illegal reentrants, explicitly insulates the [prior] removal orders from review, and *generally forecloses discretionary relief* from the terms of the reinstated order."  Fernandez-Vargas v. Gonzales, 548 U.S. 30, 34 (2006) (emphasis added).

### 2.  Apparent Conflict and Attorney General's Regulations

After IIRIRA's amendments, there is an apparent conflict between two sections of our immigration laws.  While the asylum section entitles "any alien . . . irrespective of such alien's status" to apply for asylum, § 1158(a)(1), the reinstatement provision precludes aliens with reinstated removal orders from obtaining "any relief," § 1231(a)(5).  So the question is whether an alien subject to reinstatement is eligible for asylum relief.

The Attorney General has answered this question in the negative.  Regulations promulgated by the Immigration and Naturalization Service (INS)—an agency formerly under the purview of the Attorney General—preclude aliens subject to reinstated removal orders from applying for asylum, but those aliens may nevertheless apply for withholding of removal.[3]  8 C.F.R. § 1208.31(e) (When the

---

[3] The regulations also offer relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Dec. 10, 1984, 1465 U.N.T.S. 85, based upon a showing that the applicant would likely be tortured if

6

asylum officer initially concludes the alien warrants relief, the immigration judge may consider "the request for *withholding of removal only*." (emphasis added)); id. § 1208.31(g)(2)(i) (When the asylum officer initially concludes the alien does *not* warrant relief, and the immigration judge disagrees with that determination, "[t]he immigration judge shall consider *only the alien's application for withholding of removal* . . . ." (emphasis added)); see also Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999) ("Unlike the broad class of arriving aliens who are subject to expedited removal, . . . aliens [with reinstated removal orders] are *ineligible for asylum*." (emphasis added)).[4] Thus, when an alien with a reinstated removal order credibly expresses a reasonable fear of persecution, that alien is placed in "withholding-only" proceedings, with no opportunity to apply for asylum. AR 861. This withholding-only rule is consistent with the United States' nonrefoulement obligation, as well as the statutory prohibition on deporting aliens to a country wherein the alien would suffer persecution on the basis of certain personal characteristics. 8 U.S.C. § 1231(b)(3)(A).

Unfortunately, the Attorney General's restriction on asylum makes a difference to an applicant because asylum "affords broader benefits" than

---

returned to his home country. See 8 C.F.R. § 1208.31(c). That form of relief is materially similar to withholding of removal under 8 U.S.C. § 1231(b)(3)(A), but because it is not implicated here, we do not address it.

[4] These regulations were originally promulgated as 8 C.F.R. §§ 208.31(e), 208.31(g)(2)(i), but were recodified in 2003 with a "1" preceding each section. Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824 (Feb. 28, 2003). For convenience, we refer to the recodified sections throughout this opinion.

withholding of removal.  Cardoza-Fonseca, 480 U.S. at 428 n.6.  Asylum status offers protection from deportation to any country, 8 C.F.R. § 208.22, a pathway to a green card and U.S. citizenship, id. § 209.2, the ability to travel outside the United States without being barred from reentry, id. § 223.1, and derivative asylum status for spouses and children, id. § 208.21.  Withholding of removal, however, offers none of those benefits—it only protects the applicant from removal to a country of risk, and does not even foreclose the possibility of deportation to a safe third country.  See id. § 208.22; see also Garcia v. Sessions, 856 F.3d 27, 32 (1st Cir. 2017) (describing difference in benefits between asylum and withholding of removal).

With this statutory and regulatory regime in mind, we turn to the facts of the case before us.

## B. Factual Background

R-S-C is an indigenous Guatemalan woman who has come to the United States without inspection three times to escape persecution in her home country.  In Guatemala she was raped on numerous occasions, sodomized, physically beaten and strangled, kidnapped, and extorted—all while local law enforcement authorities did nothing to prevent these abuses.  She suffered this persecution, in substantial part, because she was an indigenous Guatemalan woman in a country that routinely condoned and encouraged severe mistreatment of its own indigenous women.

After the local Guatemalan police refused to protect her from some of these reported abuses, R-S-C first fled to the United States in January 2014 without

8

inspection and was apprehended by border officials. R-S-C told them that she "had fear, and that [she] had come fleeing because [others] wanted to kill [her]." AR 205. She testified that the officers did not believe her, and that they accused all Guatemalans of being "liars." Id. Without referring her to an asylum officer to investigate her claimed fear of persecution, the border officials summarily deported R-S-C. She was ordered removed on January 13, 2014.

R-S-C stated that upon return to Guatemala she was drugged, raped, and left for dead on a riverbank. Shortly thereafter, she again made her way to the United States and arrived in early April 2014 without inspection. After being apprehended by immigration officials, she asked them to "please help [her] because [she] was fearful of returning to [her] country." AR 213. According to R-S-C, an officer called her a "liar" based on her failure to bring along her children to the United States. AR 214. Again without referring her to an asylum officer for an interview, border officials deported R-S-C on April 9, 2014.

R-S-C testified that when she returned to Guatemala, violent threats and extortion against her continued. So she fled to the United States again, this time accompanied by her eight-year-old son. She arrived in the United States without inspection on July 7, 2014, at or near Hidalgo, Texas, and was apprehended by immigration authorities on or about that same day. On July 23, 2014, the Department of Homeland Security (DHS) notified R-S-C of its intent to reinstate the prior January 13, 2014 removal order, thereby triggering the relief bar of 8 U.S.C. § 1231(a)(5). R-S-C signed a form declining to contest DHS's determination that she

9

was subject to reinstatement. She did, however, express again her fear of returning to Guatemala. This time, immigration officials referred R-S-C to an asylum officer for an interview about her claimed fear of persecution.[5]

The asylum officer found that R-S-C did not have a reasonable fear of persecution if returned to Guatemala. An immigration judge, however, subsequently reviewed and vacated that decision and placed R-S-C in "withholding-only" proceedings. Nevertheless, because of asylum's superior benefits (e.g., the pathway to citizenship, the ability to travel internationally, and the chance to apply for asylum status for a spouse and children), R-S-C asked the immigration judge to award asylum rather than withhold of removal. After a hearing, the immigration judge issued a decision on January 5, 2015, awarding R-S-C withholding of removal but ignoring R-S-C's request for asylum. R-S-C appealed to the Board of Immigration

---

[5] Federal law *requires* immigration officials to refer an alien for an interview with an asylum officer whenever that alien expresses a fear of persecution upon return to her country of origin. 8 U.S.C. § 1225(b)(1)(A)(ii). However, R-S-C does not appear to challenge the original January 13, 2014 removal order itself as void on the ground that she was unlawfully deported without such an interview. Even if she did attack the validity of that removal order, we most likely would not have jurisdiction to entertain such a challenge. See 8 U.S.C. § 1231(a)(5) ("the prior order of removal . . . is not subject to being reopened or reviewed"); see also Garcia-Marrufo v. Ashcroft, 376 F.3d 1061, 1063-64 (10th Cir. 2004) ("[O]ur jurisdiction is limited to considering whether the reinstatement order was properly entered—we cannot consider the propriety of the underlying removal order."). Nor does R-S-C argue that the reinstatement decision—which we do have jurisdiction to review—is defective on the ground that it relies on a removal order that itself was constitutionally tainted. See Garcia, 856 F.3d at 50-52 (Stahl, J., dissenting) (explaining how, under the U.S. Constitution's Suspension Clause and 8 U.S.C. § 1252(a)(2)(D), jurisdiction exists to attack the constitutionality of a reinstatement decision predicated on a removal order that was entered in violation of Due Process).

10

Appeals (BIA) on the asylum issue, arguing that even illegal reentrants with reinstated removal orders are eligible for asylum. The BIA disagreed, and dismissed the appeal. R-S-C now petitions this Court for review.

## II.  DISCUSSION

We first address R-S-C's threshold argument that the reinstatement provision does not apply to her because she did not illegally reenter the United States. Finding no merit to that contention, we proceed to answer the principal question presented in this appeal. Because Congress did not clearly resolve the conflict between § 1158(a)(1) and § 1231(a)(5) through the statutory text, we assess whether the Attorney General's interpretation is reasonable. Because the withholding-only rule is consistent with a reasonable construction of the statutory scheme, it is entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

### A. Applicability of the Reinstatement of Removal Provision to R-S-C

The reinstatement of removal provision is triggered when an alien "*reenter*[*s*] the United States *illegally*" after having been previously removed. 8 U.S.C. § 1231(a)(5) (emphasis added). R-S-C argues on appeal that the reinstatement statute and its attendant regulations do not apply to her request for relief because she did not "reenter" the United States "illegally" within the meaning of the statute. In effect, she is challenging the immigration officer's determination that she illegally reentered

11

the United States. She contends that her July 7, 2014 arrival at or near Hidalgo, Texas was not an "entry" into the United States because she was merely attempting to present herself to immigration officials to apply for asylum. And even if that did constitute an entry, it was not "illegal" because her country of origin, Guatemala, does not have an in-country processing program for refugee applicants to the United States, so arrival at the U.S. border was the only way to seek relief.

The problems with this argument are two-fold. First, R-S-C expressly declined to contest the determination that she reentered the United States illegally. Before her prior removal order was reinstated, R-S-C was given notice on a form that stated: "You illegally reentered the United States on or about July 7, 2014 at or near Hidalgo, TX." AR 866 (emphasis added). R-S-C affixed her signature next to a declaration that she "d[id] not wish to make a statement contesting this determination." Id. She could have, at that time, explained that she was looking for the nearest immigration officer in order to make her case for asylum, see, e.g. Cardova-Soto v. Holder, 659 F.3d 1029, 1031 (10th Cir. 2011) (alien submitted sworn statement contesting determination that she illegally reentered the United States), but she intentionally relinquished her right to do so.

Second, even if R-S-C's legal arguments are correct—i.e., that earnestly seeking out an immigration official to apply for asylum is not an illegal reentry within the meaning of the reinstatement statute—the administrative record here does not support that version of the facts. The INA restricts our review of R-S-C's petition only to the administrative record, see 8 U.S.C. § 1252(b)(4)(A), and

12

"administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," id. § 1252(b)(4)(B). There is simply no evidence in this record suggesting that R-S-C presented herself at the border in search of an immigration officer to file an asylum application. See Anderson v. Napolitano, 611 F.3d 275, 279 (5th Cir. 2010) (denying a petition for review of a reinstatement decision based on the alien's failure to point out evidence that undermines the immigration officer's determination of illegal reentry). To be sure, the record suggests that R-S-C came into the custody of immigration authorities in Hidalgo, TX on or about the same day that she entered the United States—but that fact alone could just as well be a testament to the skilled efforts of U.S. border patrol agents who quickly apprehended a recently-entered alien.

Without evidence that R-S-C was affirmatively seeking out an immigration officer to apply for asylum, even if that were legally sufficient to transform an entry without inspection into a lawful entry, we must regard the immigration officer's determination as "conclusive." 8 U.S.C. § 1252(b)(4)(B). This is especially true when R-S-C intentionally abandoned her right to make a statement contesting that determination. Accordingly, we decline to set aside the reinstatement decision on the ground that R-S-C did not illegally reenter the United States.

## B. Statutory Conflict Between the Asylum and Reinstatement Provisions

We turn now to the principal question presented: Can an illegal reentrant with a reinstated removal order apply for asylum? In answering this question, we proceed

13

along Chevron's two-step framework. First, we examine "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. In light of the apparent conflict between the asylum and reinstatement provisions, we conclude that the statutory command is ambiguous. Second, because "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. "If the implementing agency's construction is *reasonable*, Chevron requires a federal court to accept the agency's construction of the statute[.]" Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 980 (2005) (emphasis added). In this case, because the Attorney General's withholding-only rule is consistent with a reasonable interpretation of the statutory scheme, it warrants Chevron deference.[6]

_____

[6] Every federal court of appeals to have considered this issue has determined that the reinstatement provision bars aliens with reinstated removal orders from obtaining asylum, either because Congress clearly said so by the plain terms of the statute or because the Attorney General's reasonable regulations warrant Chevron deference. See Jimenez-Morales v. U.S. Att'y Gen., 821 F.3d 1307, 1310 (11th Cir. 2016) (resolving the issue on the plain terms of the statute); Ramirez-Mejia v. Lynch, 794 F.3d 485, 489-91 (5th Cir. 2015) (same); Herrera-Molina v. Holder, 597 F.3d 128, 138-39 (2d Cir. 2010) (same); Garcia v. Sessions, 856 F.3d 27, 35-41 (1st Cir. 2017) (deferring to Attorney General's reasonable interpretation); Cazun v. Att'y Gen. U.S., 856 F.3d 249, 254-61 (3d Cir. 2017) (same); Perez-Guzman v. Lynch, 835 F.3d 1066, 1074-77, 1079-82 (9th Cir. 2016) (same). In the cases that did not apply Chevron deference, the courts did not substantively analyze the effect of the asylum provision, 8 U.S.C. § 1158(a)(1), but rather "mentioned it only in passing[.]" Perez-Guzman, 835 F.3d at 1074 (citations omitted) (addressing the earlier cases that declined to apply Chevron deference). They focused instead on the seemingly absolute language of the reinstatement provision, which bars aliens subject to its terms from receiving "any relief." 8 U.S.C. § 1231(a)(5).

14

1.  Chevron Step One—Congress Did Not Clearly Resolve the Question

The statutory text does not clearly indicate whether illegal reentrants with reinstated removal orders are eligible to apply for asylum.  Section 1158(a)(1) entitles "*any alien . . . irrespective of such alien's status*" to apply for asylum. (emphasis added).  Section 1231(a)(5), by contrast, provides that a specific class of aliens—those who illegally reentered the United States and whose prior removal orders have been reinstated—are "*not eligible and may not apply for any relief* under this chapter[.]"[7]  (emphasis added).  It is apparent that these two provisions are at odds with one another.  The parties both attempt to explain how their preferred provision unambiguously controls over the other, but we are not persuaded.  For several reasons, this intra-statutory conflict obscures any clear command from Congress on whether aliens subject to reinstated removal orders may apply for asylum.

First, and most obviously, each provision appears to encompass the other. Section 1158(a)(1)'s language referring to "*any* alien . . . irrespective of such alien's status" logically includes aliens with reinstated removal orders.  (emphasis added). At the same time, § 1231(a)(5)'s reference to "*any* relief" naturally encompasses asylum as a particular form of prohibited relief.  (emphasis added).  The statutory

---

[7] "[U]nder this chapter" refers to Chapter 12 of Title 8 of the U.S. Code.  The provisions on asylum, set forth at 8 U.S.C. § 1158, are located within the same Chapter 12, so there is no dispute that the rules for asylum are "under this chapter," as referenced in § 1231(a)(5).

text of each subsection thus appears to incorporate the other, and Congress has offered no reliable indicator of which provision takes precedence over the other.

R-S-C counters that the reference to "any alien . . . irrespective of such alien's status" communicates an unmistakable command, while the phrase "any relief" is ambiguous, so the clear should trump the vague. The argument goes as follows. The asylum subsection, by its own terms, unquestionably applies to all aliens. By contrast, the reinstatement provision is equivocal because the apparent prohibition on applying for "any relief" does not truly foreclose all forms of immigration relief. That is because even an alien subject to reinstatement may nevertheless apply for withholding of removal. 8 U.S.C § 1231(b)(3)(A). Thus, the undefined and qualified reference to "any relief" cannot take precedence over the clear statement that "any alien . . . irrespective of such alien's status" may apply for asylum.

We reject this argument for several reasons. At the outset, the absence of any statutory definition for the term "relief" supports, rather than detracts from, our conclusion that Congress has failed to address the precise issue in this case. Furthermore, the fact that "any relief" has a caveat elsewhere in the statute does no more to undermine the breadth of the reinstatement provision than the enumerated exceptions to asylum eligibility undercut the scope of the asylum guarantee. See § 1158(a)(2)(A)-(C) (exceptions to asylum eligibility). In other words, *both* provisions are "qualified in certain respects when read in context." Perez-Guzman, 835 F.3d at 1074 (9th Cir.); accord Cazun, 856 F.3d at 255-56 (3d Cir.). We

16

therefore decline to give the asylum subsection controlling weight based upon this theory.[8]

Second, we find no clarity in the well-established principle that, when two statutes conflict, the "specific governs the general." Nitro-Lift Techs., LLC v. Howard, 568 U.S. 17, 21 (2012). We often apply this interpretive canon because "the more specific of two conflicting provisions 'comes closer to addressing the very problem posed by the case at hand and is thus more deserving of credence.'" Perez-Guzman, 835 F.3d at 1075 (9th Cir.) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 183 (2012)). But the provisions at issue here are each more specific than the other in different respects. Section 1158(a)(1) speaks narrowly to a specific form of immigration relief—asylum—but applies broadly to all aliens. Meanwhile, § 1231(a)(5) addresses a specific subset of aliens—those with reinstated removal orders—but mandates a broad denial of all forms of relief. Further, the statute does not clearly indicate whether our specific-general inquiry should focus on the *type of relief* or instead the *class of affected aliens*. We therefore cannot say that Congress has unambiguously addressed the

---

[8] It may seem odd that, under § 1231(b)(3)(A), the Attorney General must grant withholding of removal to qualifying aliens, including to aliens subject to the all-inclusive relief bar in § 1231(a)(5). The government attempts to square this incongruity in the statutory scheme by offering its own version of what "relief" should mean in the context of the reinstatement provision, arguing that withholding of removal is a form of *protection*, not "relief." We reject this proposed definition, which is unmoored from the text of the statute. The mandatory withholding-of-removal subsection need not be categorized under a different label (such as "protection") in order to make sense of the statutory scheme because withholding of removal operates effectively as an *exception* to the reinstatement provision's general relief bar.

17

dilemma that arises when an illegal reentrant with a reinstated removal order seeks asylum relief.  See Cazun, 856 F.3d at 256 (3d Cir.) (observing the same issue with respect to these provisions); Perez-Guzman, 835 F.3d at 1075-76 (9th Cir.) (same).

Third, the absence of any "reinstatement exception" within the asylum section does not clearly indicate that asylum is insulated from the reach of the reinstatement of removal provision.  R-S-C argues that if Congress intended asylum eligibility to be unavailable to a certain class of aliens (e.g., those with reinstated removal orders), it would have included that exception *in the asylum section* where all the other exceptions to asylum eligibility are located.  8 U.S.C. § 1158(a)(2) (exceptions to asylum eligibility); see also § 1158(b)(2) (exceptions to when the Attorney General may exercise his discretion to award asylum to eligible aliens).  But this demands too much of Congress.  If Congress wants to preclude the availability of all relief for a particular class of aliens, it should not be required to hunt through the INA and to insert a specific exception for each form of relief (e.g., asylum, voluntary departure, adjustment of status, cancellation of removal, etc.)—it should be sufficient to state categorically, as it did here, that a specific subset of aliens are barred from receiving any relief, which naturally encompasses the forms of relief set forth elsewhere in the statute.

For these reasons, we cannot say that the statutory text itself resolves the question presented.  Congress clearly addressed the issues of asylum eligibility and reinstated removal orders separately, but Congress has not "directly spoken to the precise question at issue" here, Chevron, 467 U.S. at 842, which is whether an illegal

reentrant with a reinstated removal order may apply for asylum.  Without any clear

answer from the statutory scheme, we turn to the Attorney General's interpretation of

the INA to determine whether it is reasonable.


2. Chevron Step Two—The Attorney General's Withholding-Only Rule Is
   Entitled to Deference

At Chevron's second step, we analyze whether "the implementing agency's

construction is reasonable," and if so we must "accept the agency's construction of

the statute."  Brand X Internet Servs., 545 U.S. at 980.  Before proceeding to analyze

that question, however, we address R-S-C's threshold argument that the Attorney

General perceived the withholding-only rule as compelled by statute.  We reject that

contention and further determine that the withholding-only rule is consistent with a

reasonable construction of the statutory scheme.  Thus it is entitled to Chevron

deference.


**i.    Whether the Attorney General Perceived That the Withholding-
          Only Rule Was Compelled By Statute**

R-S-C and *amici curiae* argue that Chevron deference does not apply here

because the Attorney General failed to perceive any ambiguity in the statutory

scheme and instead viewed the withholding-only principle as compelled by Congress.

An agency receives Chevron deference only when it exercises delegated interpretive

authority—and an agency exercises no such authority when it treats a statute as

unambiguous.  Am. Fed'n of Gov't Emps., Local 1592 v. Fed. Labor Relations Auth.,

19

836 F.3d 1291, 1295-96 (10th Cir. 2016) (citation omitted); see also Negusie v. Holder, 555 U.S. 511, 523 (2009) (concluding that the BIA did not "exercise[] its Chevron discretion to interpret the statute in question" when the BIA adopted a rule it believed was compelled by Supreme Court precedent interpreting a similar statute). When promulgating the withholding-only regulations at issue in this case, the Attorney General did not expressly acknowledge the tension between § 1158(a)(1) and § 1231(a)(5). See Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478 (Feb. 19, 1999); Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312 (Mar. 6, 1997).

But the Attorney General's silence on this statutory interplay does not mean the Attorney General missed the ambiguity. Without some affirmative indication in the regulatory record that the Attorney General believed the withholding-only rule was compelled by Congress, we will not assume as much. See Am. Fed'n of Gov't Emps., Local 1592, 836 F.3d at 1295-96 (remanding for reconsideration of an agency rule when the agency *explicitly* stated that its interpretation was compelled by statutory text). This is in accord with our sibling circuits which have held that the regulatory record's silence on this precise issue does not mean the Attorney General believed his hands were tied by Congress. See Garcia, 856 F.3d at 38 n.10 (1st Cir.); Perez-Guzman, 835 F.3d at 1079 n.8 (9th Cir.). Accordingly, we reject this threshold argument and proceed to consider whether the withholding-only regulations warrant Chevron deference.

20

### ii. Whether the Withholding-Only Rule Receives <u>Chevron</u> Deference

The Attorney General's regulations are consistent with a reasonable interpretation of the statutory scheme. Thus, they are entitled to deference. At the outset, we note that our analysis is colored by the Supreme Court's instruction that "judicial deference in the immigration context is of special importance" because of the foreign-affairs implications inherent in immigration policy. <u>Negusie</u>, 555 U.S. at 517 (citation omitted). Whether to allow certain aliens to apply for asylum could "affect our relations with the alien's native country or its neighbors[,]" so we take care to step cautiously in this field. <u>Id.</u> (quoting <u>INS v. Aguirre-Aguirre</u>, 526 U.S. 415, 425 (1999)) (alteration omitted). With this in mind, we conclude that the Attorney General's interpretation is permissible for several reasons.

First and foremost, it is reasonable for the Attorney General to conclude that § 1231(a)(5) means just what it says: that certain aliens are not eligible for "any relief." It is also reasonable to conclude that the reference to "any relief" naturally means *all* forms of relief (other than mandatory withholding of removal), including asylum. Given that the Attorney General's interpretation aligns with this statutory language, we are inclined to find that it is at least reasonable, even if it conceivably conflicts with another part of the INA statute.

Second, although we determined that the specific-general canon of statutory interpretation does not conclusively indicate which provision should take precedence, it is not unreasonable for the Attorney General to decide that the reinstatement

21

subsection is more specific in the relevant respect. Section 1231(a)(5) addresses a specific class of affected aliens (those subject to reinstatement of removal), whereas § 1158(a)(1) focuses on a particular form of relief (asylum). Because immigration cases are presented to the Attorney General as *individual persons*, not *forms of relief*, it is reasonable for the Attorney General to focus on the section of the INA that carves out a subset of persons for special treatment, rather than another section that establishes rules for a particular kind of relief that apply across the board.

Third, the Attorney General could reasonably conclude that the reinstatement provision operates with stronger force than the asylum section. Section 1231(a)(5) speaks in mandatory terms, *requiring* the Attorney General to deny relief to aliens with reinstated removal orders. § 1231(a)(5) ("alien *is not eligible* and *may not apply* for any relief" (emphasis added)). Conversely, § 1158(b) makes the award of asylum subject to the *discretion* of the Attorney General. § 1158(b) ("the Attorney General *may* grant asylum to an alien who has applied" (emphasis added)); see also Aguirre-Aguirre, 526 U.S. at 420 ("[T]he decision whether asylum should be granted to an eligible alien is committed to the Attorney General's discretion."). As one of our sibling circuits has recognized in addressing this issue, "[i]t would be strange to find that granting asylum is discretionary, but that the Attorney General *must* allow [a petitioner with a reinstated removal order] to apply, even in the face of contradictory text." Cazun, 856 F.3d at 260 (3d Cir.).

Fourth, the asylum section expressly authorizes the Attorney General to "establish *additional limitations* and conditions, consistent with [section 1158], under

22

which an alien shall be ineligible for asylum . . . ."  § 1158(b)(2)(C) (emphasis added).  This delegation of authority means that Congress was prepared to accept administrative dilution of the asylum guarantee in § 1158(a)(1).  By contrast, Congress did not water down the reinstatement mandate.  Under § 1231(a)(5), the Attorney General has no discretion to decide that some kinds of relief are immune from the eligibility bar after a removal order is reinstated.  Thus, the Attorney General could have reasonably concluded that the reinstatement provision reflects a stronger congressional command than the asylum section.[9]

Finally, the Attorney General's determination reasonably furthers IIRIRA's purpose in strengthening the reinstatement provision. Before IIRIRA, the INA subjected "only a limited class of illegal reentrants" to reinstatement of removal (e.g., "anarchists" and "subversives"), but "even those affected could seek some varieties of discretionary relief[.]"  Fernandez-Vargas v. Gonzales, 548 U.S. 30, 34 (2006) (quotation marks, citation omitted).  But in IRRIRA, Congress replaced this more lenient regime with the current reinstatement provision, which "toed a harder line" by

_____

[9] R-S-C makes much of the caveat that the Attorney General's "additional limitations" must be "*consistent with* [*section 1158*]," which is the section establishing asylum eligibility and rules for awarding asylum. § 1158(b)(2)(C) (emphasis added).  She argues that carving out a subset of aliens who may not apply for asylum is *not* consistent with the § 1158(a)(1)'s guarantee of asylum eligibility for "any alien . . . irrespective of such alien's status[.]"  We reject this reading of the statutory text.  It would mean that the Attorney General could not impose *any* limitations on asylum eligibility because any regulation that "limits" eligibility *necessarily* undermines the statutory guarantee that "any alien . . . irrespective of such alien's status" may apply for asylum.  Thus, R-S-C's preferred construction would render § 1158(b)(2)(C) meaningless, disabling the Attorney General from adopting further limitations while the statute clearly empowers him to do so.

23

applying its mandate to "all illegal reentrants . . .and [by] generally foreclos[ing] discretionary relief from the terms of the reinstated order." Id. at 35. This statutory sequence suggests that Congress intended to fortify the effect of the reinstatement provision, and the Attorney General's interpretation is faithful to that statutory purpose. See Cazun, 856 F.3d at 260 (3d Cir.); Garcia, 856 F.3d at 40 (1st Cir.).[10]

Despite the foregoing considerations, R-S-C offers two theories for why the Attorney General's interpretation is nevertheless unreasonable. First, she argues that any ambiguity should be construed in compliance with international law. See Murray v. Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118 (1804) (federal statutes "ought never to be construed to violate the law of nations if any other possible construction remains"). Article 34 of the Refugee Convention, to which the United States acceded in 1968, provides that signatory nations "shall as far as possible facilitate the assimilation and naturalization of refugees." Protocol Relating to the Status of Refugees, 19 U.S.T. 6223, 6267 (Nov. 6, 1968). Article 28 further provides that signatories "shall issue to refugees . . . travel documents for the purpose of travel outside their territory, unless compelling reasons of national security or public order otherwise require[.]" Id. In the United States, asylum status complies with these

[10] Legislative history confirms the point. Members of the House Judiciary Committee were frustrated with the "cumbersome" procedures for removing illegal aliens, and believed "[t]he asylum system [was being] abused by those who seek to use it as a means of 'backdoor' immigration." H.R. Rep. No. 104-469(I), at 107, available at 1996 WL 168955. The Committee also expressed a special frustration about illegal reentry and the lack of consequences for aliens who repeatedly cross the border. Id. at 155. These statements add further support to the position reflected in the withholding-only rule that Congress wanted the reinstatement provision to have real teeth.

24

standards—it offers a path to citizenship and enables the alien to travel abroad without fear of being turned away upon reentry.  Withholding of removal, however, does not provide such benefits.  R-S-C thus contends that the Attorney General's withholding-only interpretation is out of step with international law, and so is unreasonable.

But the conflict with international law is not so obvious.  As the Supreme Court has noted, Article 34's assimilation principle is "precatory; it does not require the implementing authority actually to grant asylum to all those who are eligible."  INS v. Cardoza-Fonseca, 480 U.S. 421, 441 (1987).  Furthermore, Article 28's travel guarantee is qualified by an exception permitting signatories to restrict travel for reasons of national security or public order.  It is not unreasonable for the Attorney General to conclude that strictly enforcing IIRIRA's relief bar advances U.S. national security or the public order.  See Garcia 856 F.3d at 41-43 (1st Cir.) (finding that the withholding-only rule did not violate the Refugee Convention).[11]

More fundamentally, the Attorney General's denial of asylum eligibility flows naturally enough from the statutory scheme, and it is conceivable that Congress was willing to accept a collision with international law in order to address what it perceived was a severe illegal-immigration problem.  "Mindful that Congress has the power to legislate beyond the limits posed by international law," Serra v. Lappin, 600

---

[11] It also warrants noting that the Refugee Convention's nonrefoulement principle—which prohibits the deportation of aliens to countries where the alien will experience persecution—is given full effect by the Attorney General's withholding-only rule.

25

F.3d 1191, 1198 (9th Cir. 2010) (internal quotation marks, citation omitted), it is not unreasonable for the Attorney General to conclude that, for reasons related to national security and public order, Congress wanted harsh consequences for illegal reentrants regardless of any potential inconsistency with the Refugee Convention.

Second, R-S-C asks us to apply the immigration equivalent of the rule of lenity to resolve this interpretive question in her favor. See Cardoza-Fonseca, 480 U.S. at 449 (referring to the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien" (emphasis added) (citations omitted)). This principle of leniency is animated by the harsh penalty of *deportation*—it has nothing to do with denying aliens extra benefits while lawfully present in the United States. See INS v. Errico, 385 U.S. 214, 225 (1966) ("We resolve the doubts in favor of [the alien] because *deportation* is a drastic measure and at times the equivalent of banishment or exile[.] It is the forfeiture for misconduct of a residence in this country." (emphasis added) (internal citation omitted) (quoting Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948))). R-S-C does not face removal to another country because her removal has been withheld pursuant to § 1231(b)(3)(A). Instead, she faces the denial of the incremental benefits that accompany asylum status, including the right to travel internationally, a pathway to citizenship, and derivative asylum status for her children. Because these concerns do not trigger the leniency principle, we do not fault the Attorney General for adopting a stricter approach which bars asylum eligibility to illegal reentrants with reinstated removal orders—especially

26

when that rule otherwise seems to reflect a reasonable interpretation of the statutory scheme.[12]

## CONCLUSION

The INA does not clearly answer the question whether an illegal reentrant with a reinstated removal order may apply for asylum. The Attorney General, however, has reasonably interpreted the ambiguous statutory scheme in concluding that such an alien is not eligible for asylum relief. We therefore defer to the Attorney General's interpretation, and DENY the petition for review.[13]

---

[12] R-S-C raises additional less developed arguments in favor of her preferred interpretation of the statutory scheme. We find them without merit, or otherwise not sufficient to unsettle the reasonable interpretation adopted by the Attorney General.

[13] We grant Petitioner's Motion for Leave to Proceed on Appeal Without Prepayment of Costs or Fees (non-PLRA).