*Ledesma v. Garland*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of April, two thousand twenty-one.

PRESENT:
        DENNY CHIN,
        RICHARD J. SULLIVAN,
        MICHAEL H. PARK,
             *Circuit Judges.*

_____

JONATHAN JOSE LOGAN LEDESMA,
        *Petitioner,*

        v.                     No. 20-1667

                                       NAC

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,
        *Respondent.*[*]

_____

_____

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Merrick B. Garland is automatically substituted as respondent.

**FOR PETITIONER:**     Jonathan Jose Logan Ledesma, *pro se*, Washington, MS.

**FOR RESPONDENT:**     Janice K. Redfern, Senior Litigation Counsel; William C. Minick, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of these motions for a stay of removal, leave to proceed in *forma pauperis*, and appointment of counsel, it is hereby **ORDERED** that the motions for IFP status and appointment of counsel are **GRANTED** and the motion for a stay of removal is **DENIED**.

Petitioner Jonathan Jose Logan Ledesma, a native and citizen of the Philippines, is currently seeking review of a May 1, 2020 decision of an Immigration Judge ("IJ") concurring with an asylum officer's negative reasonable fear determination. *In re Jonathan Jose Logan Ledesma*, No. A 201 495 870 (Immigr. Ct. N.Y.C. May 1, 2020). Before us are only Ledesma's motions requesting that he be granted a stay of removal and IFP status, and appointed counsel to assist in his appeal. Thus, we do not decide whether the IJ in fact erred in concurring with the asylum officer's negative reasonable fear determination.

*Ledesma's Expedited Removal Proceedings*

Ledesma entered the United States in 1995 on a visa and overstayed. In 2016, he was convicted of interstate travel in aid of racketeering under 18 U.S.C. § 1952(a)(3) in connection with a methamphetamine distribution scheme, which the immigration laws define as an "aggravated felony." *See* 8 U.S.C. § 1101(a)(43)(B) (defining that term to encompass "illicit trafficking in a controlled substance"); *see also Deptula v. Att'y Gen. of U.S.*, 642 F. App'x 184, 185, 188 (3d Cir. 2016) (explaining that a conviction under § 1952(a)(3) constitutes an aggravated felony). Three years after that conviction, the Department of Homeland Security ("DHS") placed Ledesma into expedited removal proceedings.

Section 1228 permits the DHS to remove aliens, like Ledesma, convicted of committing aggravated felonies through an expedited process. *See* 8 U.S.C. § 1228. While § 1228(a) supplies "the general procedures for removing criminal non-citizens," § 1228(b) "applies specifically to the removal of criminal non-citizens who are not permanent residents."[2] *Zuniga v. Barr*, 946 F.3d 464, 468 n.6 (9th Cir. 2019); *see also Umude-Louis v. Holder*, 368 F. App'x 544, 546 (5th Cir. 2010).

---

[2] Section 1228(b)(1) states that the provision applies to aliens who both have been convicted of an aggravated felony (cross-referencing § 1227(a)(2)(A)(iii)) and meet the requirements of § 1228(b)(2). Section 1228(b)(2), in turn, describes aliens who are either "not lawfully admitted for permanent residence" or "had permanent resident status on [only] a conditional basis."

3

As a non-resident convicted of an aggravated felony, Ledesma was therefore subject to the removal procedures supplied by § 1228(b). *See* 8 U.S.C. § 1228(b)(1), (2).

In August 2019, DHS entered a final administrative removal order against Ledesma. Because he was ordered removed under § 1228(b), he was ineligible for asylum. *See* 8 U.S.C. § 1228(b)(5). Ledesma was, however, permitted to seek withholding of removal and protection under the Convention Against Torture. *See Zuniga*, 946 F.3d at 467; *see also Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 187 (5th Cir. 2013). While not set forth in § 1228(b), agency regulations promulgated under that statute required that once Ledesma requested these forms of relief, he be granted a reasonable fear interview before an asylum officer. *See* 8 C.F.R. § 1208.31(a), (b); *see also* 8 C.F.R. § 1238.1(f)(3) (mandating that "[i]f [an] alien has requested withholding of removal," an immigration "officer shall, upon issuance of a Final Administrative Removal Order [pursuant to § 1228(b)], immediately refer [that] alien's case to an asylum officer to conduct a reasonable fear determination in accordance with [8 C.F.R.] § 1208.31"); *G.S. v. Holder*, 373 F. App'x

4

836, 839–40 (10th Cir. 2010) (describing this process); *Umude-Louis*, 368 F. App'x at 546–47 (same).[3]

It is undisputed that Ledesma had a right to counsel during that reasonable fear interview. *See* 8 C.F.R. 1208.31(c). Nevertheless, Ledesma attended the interview without counsel and turned down the asylum officer's offer to adjourn the interview until a later date. At the conclusion of the interview, the officer determined that, although Ledesma was credible, he did not have a reasonable fear of persecution or torture were he to be removed to the Philippines.

Ledesma thereafter sought review of that decision before an IJ pursuant to 8 C.F.R. § 1208.31(g). As before, Ledesma attended the proceeding without counsel. This time, however, Ledesma requested that the hearing be adjourned so that he could retain an attorney. The IJ denied that request, explaining that Ledesma "ha[d] a right to consult with an attorney, [but] not a right to be represented" in the hearing itself. Certified Admin. Record ("CAR") at 9. The IJ

---

[3] These two regulations were originally promulgated as 8 C.F.R. § 208.31 and § 238.1, respectively. They were recodified in 2003 to reflect the transfer of the Immigration and Naturalization Service's functions to the DHS but are otherwise unaltered, and courts often cite interchangeably between them. *See R-S-C v. Sessions*, 869 F.3d 1176, 1180 n.4 (10th Cir. 2017); *Mejia v. Sessions*, 866 F.3d 573, 580 n.4 (4th Cir. 2017); *Cazun v. Att'y Gen. U.S.*, 856 F.3d 249, 254 n.7 (3d Cir. 2017); *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1072 n.2 (9th Cir. 2016). For convenience, we refer to the modern codification of the regulations throughout this order.

then proceeded with the review and concurred with the asylum officer's negative reasonable fear determination. Because of the unique procedures applicable in expedited removal proceedings under § 1228(b), Ledesma was not permitted to appeal that decision to the Board of Immigration Appeals. *See* 8 C.F.R. § 1208.31(g)(1) (explaining that "[i]f the [IJ] concurs with the asylum officer's determination that the alien does not have a reasonable fear of persecution or torture, the case shall be returned to DHS for removal of the alien" and "[n]o appeal shall lie from the immigration judge's decision").

*Discussion*

**A.  IFP Status & Appointment of Counsel**

To start, Ledesma requests both IFP status and that counsel be appointed to assist with his appeal. These motions present similar issues and so can be resolved in tandem.

We may waive filing fees for litigants who are unable to pay so long as their petitions for relief are not frivolous. *See* 28 U.S.C. § 1915(a); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (holding that a petition "is frivolous where it lacks an arguable basis either in law or in fact"). Likewise, we may appoint an attorney for "any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). When

6

deciding whether to assign counsel to an indigent civil litigant under § 1915, we ask "first whether the claimant has met 'a threshold showing of some likelihood of merit.'" *Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989)); *see also Hodge v. Police Officers*, 802 F.2d 58, 60–61 (2d Cir. 1986) (explaining that counsel should not be appointed where "the indigent's chances of success are extremely slim" (internal quotation marks omitted)). Once this threshold requirement has been satisfied, "we consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001); *see also Hodge*, 802 F.2d at 61–62.

Ledesma's motions meet all these requirements. To start, Ledesma is financially indigent and therefore eligible for IFP status and appointment of counsel. He is presently detained and reports that he has no income or financial assets. *See* IFP Mot. Aff. at 2–6. As for the merits of Ledesma's petition, we agree that he has demonstrated "some likelihood of merit" and that the issues presented are sufficiently complex to warrant granting these two motions.

Ledesma's case raises the question of whether aliens have a right to be represented by counsel, at no expense to the government, in reasonable fear review hearings before an IJ that occur as part of an expedited removal process under § 1228(b). The government's argument that no such right exists is premised on 8 C.F.R. § 1208.31, the regulation governing such proceedings. *See Zuniga*, 946 F.3d at 468. As the government points out, that regulation expressly states that an alien has a right to counsel during the initial reasonable fear interview with an asylum officer, but is silent as to whether the same right attaches to a subsequent review of that asylum officer's conclusion by an IJ. *Compare* 8 C.F.R. § 1208.31(c), *with id.* § 1208.31(g). The government concludes that this silence indicates that there is no right to counsel at the review hearing. *See* Gov't Opp'n at 3; *see also Bonilla v. Sessions*, 891 F.3d 87, 92 (3d Cir. 2018) (explaining that 8 C.F.R. § 1208.31(g) does not "explicitly invest[]" an alien with a right to counsel in a reasonable fear review hearing before an IJ, but resolving the appeal on other grounds without determining whether such a right otherwise exists).

While our Court has never considered this question, the Ninth Circuit rejected the government's position in *Zuniga*, 946 F.3d at 468–70. There, the Ninth Circuit rested its analysis on the language of 8 U.S.C. § 1228(b)(4)(B), which states

that an alien "shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose."   As the Ninth Circuit explained, "[n]othing in the language of § 1228 indicates that the right to counsel is conditional or limited only to certain types of proceedings initiated under that statute, expedited or otherwise." *Zuniga*, 946 F.3d at 469.   In light of the statute's plain text, as well as other contextual clues, the Ninth Circuit concluded that aliens have a statutory "right to representation by an attorney in [a] reasonable fear review hearing before [an] IJ," and dismissed as irrelevant the government's argument concerning 8 C.F.R. § 1208.31, since courts "need not accept an agency's interpretation of its own regulations if that interpretation is inconsistent with the statute under which the regulations were promulgated."   *Zuniga*, 946 F.3d at 470 (internal quotation marks omitted).

Of course, the IJ here did not prevent Ledesma's lawyer from participating in the review proceeding.   Instead, the IJ simply refused to adjourn the proceeding to permit Ledesma, who was unrepresented, additional time to retain counsel.   As a general matter, whether to grant an adjournment is left to the discretion of the IJ.   *See* 8 C.F.R. § 1240.6 (explaining that "[a]fter the

9

commencement of [a] hearing, the [IJ] may grant a reasonable adjournment either at his or her own instance or, for good cause shown, upon application by the respondent or the [DHS]"); *see also Villa v. Holder*, 403 F. App'x 599, 602 (2d Cir. 2010). And had the IJ merely concluded that Ledesma lacked good cause for an adjournment – perhaps because Ledesma is fluent in English and already had over a month to retain counsel – it is unlikely that we would have second-guessed that determination. *Cf. Bonilla*, 891 F.3d at 92 (explaining that the petitioner "was not denied the opportunity to obtain the counsel of his choice; his attorney simply failed to come through for him" (internal quotation marks and brackets omitted)). After all, IJs are permitted to set and enforce deadlines to keep cases moving so as to preserve scarce administrative resources and to vindicate the rights of the many thousands of petitioners seeking a hearing. *See Kohn v. Barr*, 813 F. App'x 623, 626 (2d Cir. 2020) (noting that the agency is not required to grant "an infinite number of adjournments" (internal quotation marks omitted)); *Sanusi v. Gonzales*, 445 F.3d 193, 199 (2d Cir. 2006) (explaining that "IJs have . . . broad discretion with respect to calendaring matters"). But that's not what the IJ did here.

Instead, the IJ denied Ledesma's adjournment request based on the IJ's legal conclusion that, while Ledesma "ha[d] a right to consult with an attorney," he did

10

"not [have] a right to be represented" in the proceeding itself. CAR at 9. As a result, if Ledesma ultimately succeeds in this appeal and demonstrates that he in fact does possess a right to counsel at the reasonable fear review hearing, then the IJ's decision would likely constitute an abuse of discretion. *See United States v. Gonzalez-Roque*, 301 F.3d 39, 45–46 (2d Cir. 2002) (explaining that an IJ abuses its discretion when its decision is "made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis" (internal quotation marks omitted)); *cf. Gurung v. Barr*, 929 F.3d 56, 60 (2d Cir. 2019) (explaining that "a judicial judgment cannot be made to do service for an administrative judgment" where "the agency has misconceived the law" (internal quotation marks omitted)).

The government responds that even if Ledesma proves on appeal that he had a statutory right to counsel, and that this right to counsel was violated, he would nonetheless be ineligible for relief because he has identified no prejudice flowing from that denial – in other words, the presence of counsel at that hearing would have had no impact on the result. *See* Gov't Opp'n Br. at 3. Perhaps. But our precedent suggests that a petitioner need not show prejudice where he was denied a statutory right to counsel during an agency hearing. *See Rajah v.*

11

*Mukasey*, 544 F.3d 427, 447 (2d Cir. 2008) (explaining that a petitioner is eligible for relief as a result of "regulatory violations occurring during a deportation hearing that affect fundamental rights derived from the Constitution or federal statutes[,] . . . even without a showing of prejudice" (emphasis omitted)); *see also Montilla v. INS*, 926 F.2d 162, 169 (2d Cir. 1991) (holding that "an alien claiming the INS has failed to adhere to its own regulations regarding the right to counsel in a deportation hearing is not required to make a showing of prejudice before he is entitled to relief").

In sum, Ledesma's appeal raises several issues that are both complex and have at least enough merit to warrant the appointment of counsel.[4]  We therefore conclude that Ledesma should be granted IFP status and appointed counsel for

---

[4] To be sure, there is a potential jurisdictional impediment to Ledesma's appeal:  it is an open question in our Circuit whether we have jurisdiction to review the outcome of a reasonable fear hearing before an IJ.   Because "jurisdictional issues can make success on the merits more unlikely due to potential impediments to even reaching the merits," *Hassoun v. Searls*, 968 F.3d 190, 195 (2d Cir. 2020) (internal quotation marks omitted), that uncertainty cuts against Ledesma. Nevertheless, we need not definitively resolve the jurisdictional issue to grant his motions because the issue is itself complex and Ledesma has at least some chance of succeeding on it – indeed, several of our sister circuits have exercised jurisdiction to review an IJ's negative reasonable fear determination in similar circumstances.  *See, e.g.*, *Zapata-Martinez v. Att'y Gen. U.S.*, 810 F. App'x 164, 168 (3d Cir. 2020); *Bartolome v. Sessions*, 904 F.3d 803, 811 (9th Cir. 2018); *Lucas v. U.S. Att'y Gen.*, 652 F. App'x 854, 859 (11th Cir. 2016).   That said, we conclude only that Ledesma has met the standard for the appointment of counsel, and our decision should not be read to resolve the ultimate merits of this jurisdictional issue.   In fact, this precise issue appears to have already been presented to another panel of this Court.   *See Bhaktibhai-Patel v. Wilkinson*, No. 19-2565 (2d Cir.).

the purposes of his appeal.

**B.    Stay of Removal**

In addition to seeking IFP status and the appointment of counsel, Ledesma seeks a stay of removal pending the resolution of his appeal.  We may grant Ledesma a stay of removal after considering "(1) whether [Ledesma] has made a strong showing that he is likely to succeed on the merits; (2) whether [Ledesma] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure [the government] . . . ; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks omitted); *see also Hassoun v. Searls*, 968 F.3d 190, 195 (2d Cir. 2020).  "The first two factors are the most critical, but a stay is not a matter of right, even if irreparable injury might otherwise result[;] it is an exercise of judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (internal quotation marks and brackets omitted); *see also Maldonado-Padilla v. Holder*, 651 F.3d 325, 328 (2d Cir. 2011) (Jacobs, *J.,* in chambers) (explaining that "a stay is an intrusion into the ordinary process of administration and judicial review," which requires "the party requesting a stay [to] bear[] the burden of

13

showing that the circumstances justify an exercise of the Court's discretion" (internal quotation marks and brackets omitted)).

In light of our analysis above, Ledesma has put forward a strong argument that his motion satisfies the first *Nken* factor. But we need not resolve whether he has actually met that factor because, even if he has, his motion still fails on the other remaining *Nken* prongs.

**1.    Irreparable Injury**

To satisfy the second *Nken* factor, the stay applicant must show more than "some possibility of irreparable injury." *Nken*, 556 U.S. at 434–35 (internal quotation marks omitted). Ledesma's primary contention that a denial of a stay will result in irreparable injury is that, if he is removed from the country, any future victory in this appeal would likely be empty since, as a practical matter, he would be unable to return because of his financial condition. But there are a few problems with that argument.

To start, the Supreme Court has made clear that while "removal is a serious burden for many aliens, it is not categorically irreparable" because "[a]liens who are removed may continue to pursue their petitions for review [from abroad], and those who prevail can be afforded effective relief by facilitation of their return,

14

along with restoration of the immigration status they had upon removal." *Id.* at 435. The government has further explained that it will facilitate the return of an alien if "either the court's decision restores the alien to lawful permanent resident . . . status, or the alien's presence is necessary for continued administrative removal proceedings." Memorandum from John Morton, Director, U.S. Immigr. & Customs Enf't, 11061.1: Facilitating the Return to the United States of Certain Lawfully Removed Aliens 1 (Feb. 24, 2012).

In any event, we are not convinced that Ledesma's financial position would present an insurmountable obstacle if he were to be permitted to return to the country following removal. Even accounting for Ledesma's lack of current assets, he has given us no reason to think that he would be unable to purchase a plane ticket in the event that he were to prevail on the merits of his appeal.

Ledesma also asserts that he will likely be harmed by the Philippine government if removed because the government has implemented a violent and aggressive anti-drug campaign. But Ledesma identifies nothing to suggest that he specifically would be targeted as part of that campaign. Ledesma's drug crime occurred here, not in the Philippines, and he offers nothing but bald speculation to suggest that the Philippine government will learn of his conviction. Indeed,

15

Ledesma's only basis for concluding that the Philippine government will target him is that he apparently knows some individuals who returned to the Philippines from America after a narcotics conviction and were kidnapped. Ledesma admits, however, that he has no idea who kidnapped those individuals or what the motivation was behind those kidnappings. And, perhaps just as important, Ledesma himself has never been threatened by the Philippine government.

Accordingly, this factor does not favor a stay of removal.

### 2. Injury to the Government & the Public Interest

Where, as here, the government is the party opposing a stay, the third and fourth *Nken* factors "merge." *Nken*, 556 U.S. at 435. At first blush, this combined factor does not appear to strongly favor either party. On the one hand, "there is a public interest in preventing aliens from being wrongfully removed." *Id.* at 436. But on the other hand, "[t]here is always a public interest in prompt execution of removal orders." *Id.* Ledesma's racketeering conviction, however, knocks these considerations out of equipoise since the interest in executing removal orders is especially acute when the alien in question "is particularly dangerous." *Id.* Ledesma plainly fits within that category of aliens as he and another individual were arrested in a car with almost 4,000 grams of methamphetamine and two

16

loaded handguns. Thus, this final prong also weighs against granting Ledesma relief.

*    *    *

In light of the above analysis, we conclude that Ledesma has not carried his burden of demonstrating that a stay of removal is appropriate.

**Conclusion**

For the foregoing reasons, Ledesma's motion for a stay of removal pending appeal is **DENIED**, his motions for IFP status and appointment of counsel are **GRANTED**, and counsel shall be appointed from this Court's pro bono panel. Once counsel has been appointed, the Clerk of Court is respectfully directed to set a schedule for the parties' briefing.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

17