**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JUAN ALBERTO LUCIO-RAYOS,

    Petitioner,

v.

JEFFERSON B. SESSIONS III, United
States Attorney General,

    Respondent.

------------------------------

IMMIGRANT DEFENSE PROJECT;
NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS
GUILD; AMERICAN IMMIGRATION
LAWYERS ASSOCIATION;
DETENTION WATCH NETWORK;
ROCKY MOUNTAIN IMMIGRANT
ADVOCACY NETWORK; COLORADO
LAWYERS COMMITTEE; NEW
MEXICO CRIMINAL DEFENSE
LAWYERS ASSOCIATION; UTAH
ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS; PROFESSOR
CHRISTOPHER LASCH; PROFESSOR
NOAH B. NOVOGRODSKY;
PROFESSOR VIOLETA CHAPIN,

    Amici Curiae.

No. 15-9584

_____

**Appeal from the Board of Immigration Appeals**
**(Petition for Review)**
_____

James S. Lamb, Chan Law Firm, Denver, Colorado, for Petitioner.

Corey L. Farrell (Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Terri J. Scadron, Assistant Director, and Lisa Morinelli, on the brief), United States Department of Justice, Washington, D.C. for Respondent.

Aaron Scherzer (Jayashri Srikantiah and Lisa Weissman-Ward, Mills Legal Clinic, Stanford, California; Manuel Vargas and Andrew Wachtenheim, Immigrant Defense Project, New York, New York, on the brief), Orrick, Harrington & Sutcliffe, LLP, New York, New York, for Amici Curiae.

_____

Before **HARTZ** and **EBEL**, Circuit Judges.[1]

_____

**EBEL**, Circuit Judge.

_____

The question presented in this petition for review is whether Petitioner Juan Alberto Lucio-Rayos's municipal theft conviction qualifies as a crime involving moral turpitude ("CIMT"), which would make him ineligible for cancellation of removal. Lucio-Rayos was convicted under a divisible municipal code provision that sets forth several different theft offenses, some of which qualify as CIMTs and some of which do not. Applying the modified categorical approach, it is not possible to tell which theft offense was the basis of Lucio-Rayos's conviction. However, because it is Lucio-Rayos's burden to establish his eligibility for cancellation of removal, he

---

[1] The Honorable Neil Gorsuch participated in the oral argument but not in the decision in this case. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. See 28 U.S.C. § 46(d); see also United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th Cir. 1997) (noting that this court allows remaining panel judges to act as a quorum to resolve an appeal). In this case, the two remaining panel members are in agreement.

2

bears the brunt of this inconclusive record. We, therefore, uphold the Board of Immigration Appeals ("BIA")'s determination that Lucio-Rayos has not shown that he is eligible for cancellation of removal. We also conclude that the immigration judge ("IJ") did not deprive Lucio-Rayos of due process by refusing to recuse from hearing his case. Thus, having jurisdiction under 8 U.S.C. § 1252(a)(2)(D), we DENY Lucio-Rayos's petition for review.[2]

## I. BACKGROUND

Lucio-Rayos, a citizen of Mexico who entered the United States without authorization, conceded that he is subject to removal, but seeks discretionary relief from the Attorney General in the form of cancellation of removal under 8 U.S.C. § 1229b(b). The IJ ruled that Lucio-Rayos is not eligible to apply for cancellation of removal because his prior theft conviction under the Westminster, Colorado Municipal Code, WMC 6-3-1(A), is for a CIMT. The BIA affirmed. Lucio-Rayos has petitioned this court to review the BIA's decision. See 8 U.S.C. § 1252. We have jurisdiction to consider his constitutional claims and questions of law involving statutory construction. Id. § 1252(a)(2)(D); see Flores-Molina v. Sessions, 850 F.3d 1150, 1157 (10th Cir. 2017). We review these matters de novo, although in appropriate circumstances we may defer to the BIA's interpretation of the immigration laws it implements. See Flores-Molina, 850 F.3d at 1157.

---

[2] The panel GRANTS Lucio-Rayos's motion to file a supplemental brief and has considered that brief.

3

## II. DISCUSSION

### A. The IJ did not deprive Lucio-Rayos of due process by refusing to recuse

As an initial matter, Lucio-Rayos contends that the IJ erred in refusing to recuse from considering Lucio-Rayos's case because the IJ's spouse is one of two supervising Deputy Chief Counsel for the Immigration and Customs Enforcement ("ICE") office in Denver, the office which initiated this removal proceeding against Lucio-Rayos.[3] The BIA rejected this argument. We do, too.

Lucio-Rayos's recusal argument is essentially a due process claim, which we review de novo. See Hassan v. Holder, 604 F.3d 915, 923 (6th Cir. 2010). He is entitled to a full and fair removal hearing that comports with due process. See Kapcia v. INS, 944 F.2d 702, 705 (10th Cir. 1991) (quoting Vissian v. I.N.S., 548 F.3d 325, 329 (10th Cir. 1977)). That includes a fair and impartial decision-maker. See Vargas-Hernandez v. Gonzales, 497 F.3d 919, 925 (9th Cir. 2007) (citing In re Exame, 18 I&N Dec. 303, 306 (BIA 1982)). In order to prevail on his due process claim, Lucio-Rayos must establish both that he was deprived of due process and that that deprivation prejudiced him.[4] See Alzainati v. Holder, 568 F.3d 844, 851 (10th Cir. 2009); see also Hassan, 604 F.3d at 923 (6th Cir.).

---

[3] Contrary to the Government's argument, Lucio-Rayos adequately raised his recusal argument to the BIA.

[4] Because Lucio-Rayos, to prevail, must show prejudice from a due process violation, his blanket suggestion that the IJ must recuse from all removal proceedings initiated and prosecuted by the Denver ICE office does not warrant relief.

4

Lucio-Rayos has not made such a showing. Generally speaking, an IJ must recuse if 1) she has "a personal, rather than a judicial, bias stemming from an 'extrajudicial' source which resulted in an opinion on the merits on some basis other than what the immigration judge learned from [her] participation in the case," 2) "such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party," In re Exame, 18 I&N Dec. at 306 (internal quotation marks omitted); see also Vargas-Hernandez, 497 F.3d at 925 (9th Cir.), or 3) the IJ has an inherent bias, see Hassan, 604 F.3d at 923 (6th Cir.).

Lucio-Rayos presents extrajudicial-influence and inherent-bias arguments, relying by analogy on 28 U.S.C. § 455(a), which requires a federal judge to recuse "in any proceeding in which his impartiality might reasonably be questioned."[5] However, the record indicates that the Denver ICE office has a plan in place to ensure that the IJ's spouse has no involvement in cases pending before the IJ. And Lucio-Rayos has not asserted any evidence suggesting that the IJ's spouse played any role in Lucio-Rayos's removal proceedings. A reasonable person, knowing these

---

[5] 28 U.S.C. § 455 applies to the recusal of federal judges and does not expressly apply to IJs. See Yosd v. Mukasey, 514 F.3d 74, 78 n.4 (1st Cir. 2008). Nonetheless, courts rely on § 455 to inform their analysis of recusal issues involving IJs. See Shewchun v. Holder, 658 F.3d 557, 570-71 (6th Cir. 2011); Yosd, 514 F.3d at 78 n.4.

facts, would not question the IJ's impartiality to conduct Lucio-Rayos's removal proceeding.[6]

Lucio-Rayos also relies by analogy on 28 U.S.C. § 455(b)(5)(i), which requires a federal judge to recuse if her spouse "[i]s a party to the proceeding, or an officer, director, or trustee of a party." But that is not the situation presented here. While the IJ's spouse represents a party to this case, the spouse is not himself a party, nor an officer, director, or trustee of a party.

In addition, Lucio-Rayos has not shown that he was prejudiced by the IJ's refusal to recuse; that is, Lucio-Rayos has not shown that "his rights were violated in a manner so as potentially to affect the outcome of the proceedings," Vargas-Hernandez, 497 F.3d at 926 (9th Cir.) (internal quotation marks omitted). We, therefore, uphold the IJ's refusal to recuse from hearing Lucio-Rayos's case.

**B. The BIA did not err in concluding that Lucio-Rayos is ineligible for cancellation of removal**

---

[6] If Lucio-Rayos is also challenging the IJ's decision to deny Lucio-Rayos's application for a subpoena to the Denver ICE office to produce the conflict-avoidance plan and the names, contact information and supervisor for all members of that office, we decline to address that argument, which Lucio-Rayos did not adequately raise to the BIA. See 8 U.S.C. § 1252(d)(1) (requiring exhaustion of administrative remedies); see also Sidabutar v. Gonzales, 503 F.3d 1116, 1118 (10th Cir. 2007) (stating that this court will "generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA"). However, we note that the record indicates that Lucio-Rayos, in his motion to the IJ seeking the IJ's recusal, was able to set forth the general details of the conflict-avoidance plan and that the ICE office informed the Colorado Chapter of the American Immigration Lawyers Association of this plan at the time of the IJ's appointment.

6

To be eligible for cancellation of removal, Lucio-Rayos had to meet four requirements. See 8 U.S.C. § 1229b(b)(1).[7] The only one of those requirements at issue here is whether, under 8 U.S.C. § 1229b(b)(1)(C), Lucio-Rayos's Westminster conviction for theft is a crime involving moral turpitude ("CIMT") as defined by the Immigration and Nationality Act ("INA") in 8 U.S.C. § 1182(a)(2)(A)(i)(I) or § 1227(a)(2)(A)(i). If it is, and if no exceptions apply, Lucio-Rayos is ineligible for cancellation of removal. Id. § 1229b(b)(1)(c); see, e.g., Flores-Molina, 850 F.3d at 1155-56.

**1. Convictions under WMC 6-3-1(A) do not categorically qualify as CIMTs**

---

[7] 8 U.S.C. § 1229b(1) provides:

The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien--

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5) [regarding waiver for domestic violence victims]; and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

7

We first apply the "categorical approach" to determine whether Lucio-Rayos's Westminster theft conviction qualifies as a CIMT by comparing the elements of that offense to the INA's definition of a CIMT. See Flores-Molina, 850 F.3d at 1158. Although "the INA does not provide a generic definition of 'crime involving moral turpitude,'" the Attorney General, the BIA, and federal courts have generally defined "moral turpitude" to "refer[] to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality," and to "reach[] conduct that is inherently wrong, . . . rather than conduct deemed wrong only because of a statutory proscription." Id. at 1158-59 (internal quotation marks omitted). "Alongside these very general translations, the BIA and courts have espoused what might be characterized as subsidiary definitions and rules applicable to narrower classes of conduct." Id. at 1159 (citation, internal quotation marks, alteration omitted). Relevant here, established BIA precedent provides that a theft conviction like Lucio-Rayos's qualifies as a CIMT only if one element of the theft offense is that the perpetrator intended to deprive the victim permanently of his property. See In re Grazley, 14 I&N Dec. 330, 333 (BIA 1973), overruled by In re Diaz-Lizarraga, 26 I&N Dec. 847, 849-52 (BIA 2016); see also De Leon v. Lynch, 808 F.3d 1224, 1229 (10th Cir. 2015) (referencing this line of BIA decisions). The BIA applied that definition of a CIMT involving theft to Lucio-Rayos's case.[8]

---

[8] Before this Court, the Government suggests that the BIA had "not definitively resolved whether . . . [,] if the [theft] offense required only an intent to temporarily deprive the owner of the use or benefit of the property taken, the crime would not be one of moral turpitude." (Resp. Br. 22 (internal quotation marks omitted).) To the

Later, after the BIA's decision in this case, the BIA "updated" its definition of theft offenses that qualify as a CIMT to provide that "a theft offense is a [CIMT] if it involves an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded," In re Diaz-Lizarraga, 26 I&N Dec. at 853. That new definition, however, does not apply retroactively here to Lucio-Rayos's case because a revised rule adopted by the BIA in the exercise of its delegated legislative policymaking authority is presumed to apply prospectively only to cases initiated after its issuance. See Gutierrez-Brizuela v. Lynch, 834 F.3d 1142, 1145-46 & 1146 n.1 (10th Cir. 2016). Neither party suggests any reason why that presumption does not apply here.

We, therefore, turn to the categorical approach to determine whether a Westminster theft conviction categorically requires proof that the perpetrator intended to deprive the victim permanently of his property, see In re Grazley, 14 I&N Dec. at 333. The Westminster Municipal Code provision at issue, 6-3-1(A), provides:

> It shall be unlawful to commit theft. A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, where the value of the thing involved is less than five hundred dollars ($500), and:
>
> > (1) Intends to deprive the other person permanently of the use or benefit of the thing of value; or

contrary, in In re Diaz-Lizarraga, a case decided after the BIA ruled in Lucio-Rayos's case, the BIA indicated that "[f]rom the Board's earliest days we have held that a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to permanently deprive an owner of property." 26 I&N Dec. at 849.

9

(2) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or

(3) Uses, conceals, or abandons the thing of value intending that such use, concealment or abandonment will deprive the other person permanently of its use and benefit; or

(4) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

(A.R. 555.)

Lucio-Rayos contends that a conviction under WMC 6-3-1(A)(4) does not require proof that the perpetrator intended to deprive the victim permanently of his property. We agree.[9]

The fact that other provisions of this municipal code provision expressly require proof of the perpetrator's intent to deprive the victim of his property permanently, but WMC 6-3-1(A)(4) does not, strongly indicates that the intent to deprive the victim permanently of his property is <u>not</u> an element under WMC 6-3-1(A)(4). <u>Cf.</u> <u>People v. Mendro</u>, 731 P.2d 704, 706 & n.1 (Colo. 1987) (addressing almost identically worded provisions of Colorado's theft statute, Colo. Rev. Stat. 18-4-401(1), and stating that "[a]ll of the subsections of 18-4-401, except (d) [which is

---

[9] Lucio-Rayos further argues in his petition for review that WMC 6-3-1(A)(2), which applies when the perpetrator "[k]nowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit," does not require proof that the perpetrator <u>intends</u> to deprive the victim permanently of his property. But because Lucio-Rayos did not exhaust this argument by making it to the BIA, we lack jurisdiction to address it. <u>See</u> <u>Molina v. Holder</u>, 763 F.3d 1259, 1262-63 (10th Cir. 2014).

the same as WMC 6-3-1(A)(4)], contain an express culpable mental state element");

People v. Meyers, 609 P.2d 1104, 1104-05 (Colo. Ct. App. 1979) (addressing

sufficiency of evidence to support conviction under § 18-4-401(1)(d) without

addressing intent to deprive owner of property permanently).

The Government nevertheless argues, and the BIA concluded, that WMC 6-3-1(A)(4) implies "that the deprivation will be permanent if the rightful owner of the property is unwilling or unable to pay the consideration demanded for return of the property." (Resp. Br. 24.) Owing the BIA no deference to its interpretation of state or local criminal statutes, see Flores-Molina, 850 F.3d at 1157, we disagree that this is sufficient to make the intent to deprive a victim of his property permanently an element of a theft offense under WMC 6-3-1(A)(4).

In reaching that conclusion, we consider, as the BIA did, Colorado's application of its analogous theft statute, Colo. Rev. Stat. § 18-4-401(1), which, with regard to the issue before us, is nearly identical to WMC 6-3-1. See Colo. Rev. Stat. § 18-4-401(8) (2017) (giving municipalities "concurrent power to prohibit theft, by ordinance, where the value of the thing involved is less than one thousand dollars."). See generally Flores-Molina, 850 F.3d at 1166 (looking to analogous Colorado statutes when interpreting a Denver municipal ordinance). Colorado's Criminal Jury Instructions indicate that the intent to deprive the victim permanently of his property is not an element of "theft (demanding consideration)." See Colo. Jury Instructions 4-4:04 (2016). Further, the BIA and the Government have not cited any Colorado case that construes the crime of "theft (demanding consideration)" to require proof

11

that the defendant intended to deprive the victim of his property permanently.

Instead, the BIA and the Government rely only on Colorado cases making general statements about theft offenses as a whole.[10] Those cases do not persuade us that, contrary to the plain language of the Westminster municipal ordinance and the analogous Colorado Criminal Jury Instructions, proof that the defendant intended to deprive the victim of his property permanently is an element of "theft (demanding consideration)." We hold, therefore, in light of WMC 6-3-1(A)(4), that not all convictions under the Westminster code's theft provision require proof that the defendant intended to deprive the victim of his property permanently. A conviction generally under WMC 6-3-1(A), thus, does not categorically qualify as a CIMT.[11]

### 2. WCM 6-3-1(A) is divisible

[10] See People v. Warner, 801 P.2d 1187, 1188-89 (Colo. 1990) (explaining, in a case addressing theft by deception from a person, Colo. Rev. Stat. § 18-4-401(1)(a), (5), that Colorado's current theft statute, id. § 18-4-401, incorporates the common-law offenses of larceny, embezzlement, false pretenses, and confidence games); People v. Sharp, 104 P.3d 252, 254-58 (Colo. Ct. App. 2004) (stating, in holding that there was sufficient evidence to support a conviction for theft under Colo. Rev. Stat. § 18-4-401(1)(b), by knowingly using, concealing, or abandoning "the thing of value in such manner as to deprive the other person permanently of its use or benefit," that jury can infer intent to deprive another permanently of the use of benefits of a thing of value from defendant's conduct and the circumstances of the case). The Colorado case on which Lucio-Rayos relies, People v. Quick, 713 P.2d 1282, 1285-89 (Colo. 1986), also is not directly on point because it addressed theft offenses under § 18-4-401(1)(a), (b), and (c), rather than the analogous state provision relevant here, § 18-4-401(1)(d), and theft cases brought under an earlier state theft statute.

[11] In light of our conclusion that a theft conviction under WMC 6-3-1(A) is not categorically a CIMT, the Government asks us to remand this case to the BIA to allow it to consider whether a conviction under WMC 6-3-1(A) qualifies categorically as a CIMT for some other reason. But the Government did not argue to the IJ or the BIA any other grounds for deeming Lucio-Rayos's theft conviction to qualify as a CIMT.

The BIA further erred in concluding that WMC 6-3-1(A) is not divisible. It is, instead, divisible because it sets forth different crimes in its four separate provisions. See Mathis v. United States, 136 S. Ct. 2243, 2249 (2016) (explaining that a divisible statute "list[s] elements in the alternative, and thereby define[s] multiple crimes"). The parties have not cited, and we have not found, any cases specifically addressing whether WMC 6-3-1(A), or the state's analogous theft statute, is divisible. But Colorado's Criminal Jury Instructions indicate the analogous state theft statute is divisible by setting forth different pattern instructions, each with different elements, for theft offenses prosecuted under § 18-4-401(1)(a) through (e). See Colo. Jury Instructions 4-4:01 through 4-4:05 (2016). See generally United States v. Titties, 852 F.3d 1257, 1267-71 (10th Cir. 2017) (applying Mathis and looking, e.g., to the text of the statute, state-court decisions and state pattern jury instructions to determine whether state criminal statute is divisible).

Our conclusion that WMC 6-3-1(A) is divisible is bolstered by the history of the analogous Colorado theft statute, by which the state legislature incorporated the common-law crimes against property, including larceny, embezzlement, false pretenses, and confidence games, into a general, consolidated theft statute, while retaining "much of the substantive elements for the offenses." Warner, 801 P.2d at 1189. For these reasons, we conclude that WMC 6-3-1(A) is divisible. The parties do not argue to the contrary.

13

**3. Applying the modified categorical approach does not establish under which provision of WMC 6-3-1(A) Lucio-Rayos was convicted[12]**

Having concluded that WMC 6-3-1(A) is divisible, we then apply the modified categorical approach to determine under which provision of WMC 6-3-1(A) Lucio-Rayos was convicted, looking to charging documents, jury instructions, or plea agreement and colloquy. See Mathis, 136 S. Ct. at 2249. We do not spend time addressing those documents here because it is undisputed that none of the documents in the record indicates under what provision Lucio-Rayos was convicted.

**4. Lucio-Rayos bears the burden of proving that he was not convicted of a CIMT**

Because, after applying the modified categorical approach, we cannot determine under which section of WMC 6-3-1(A) Lucio-Rayos was convicted (e.g., whether his conviction was under WMC 6-3-1(A)(4), which we have held does not satisfy the definition of a CIMT, or under another provision of WMC 6-3-1(A) which may satisfy the test for a CIMT), we must decide who bears the brunt of this unclear record.

Congress has placed the burden of proving eligibility for relief from removal squarely on the alien: "An alien applying for relief or protection from removal has the burden of proof to establish that the alien—(i) satisfies the applicable eligibility

---

[12] Although the BIA held that WMC 6-3-1(A) was not divisible, the BIA went on to conclude, alternatively, that if it were divisible (as we have concluded), Lucio-Rayos failed to establish, under the modified categorical analysis, that his theft conviction was not a CIMT. We, therefore, continue to review the BIA's decision by applying the modified categorical approach.

requirements . . . ." 8 U.S.C. § 1229a(c)(4)(A); see also Gutierrez-Orozco v. Lynch, 810 F.3d 1243, 1246 (10th Cir. 2016) (applying § 1229a(c)(4)(A) to alien's application for cancellation of removal). 8 C.F.R. § 1240.8(d) reiterates that the alien has "the burden of establishing that he or she is eligible for any requested benefit or privilege," and further provides that where, as here, "the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." See generally R-S-C v. Sessions, 869 F.3d 1176, 1186 (10th Cir. 2017) (affording Chevron[13] deference to Attorney General's regulation that was consistent with reasonable interpretation of statutory scheme). This authority clearly indicates it is the alien that bears the burden of proving he is eligible to seek discretionary relief from removal.

Relying on 8 C.F.R. § 1240.8(d), we have previously held, in a case like this one, that it is the undocumented alien who bears the burden of proof, under the modified categorical approach, to show that his prior conviction was not a CIMT that would make him ineligible for relief from removal. See Garcia v. Holder, 584 F.3d 1288, 1289-90 (10th Cir. 2009) (holding alien failed to meet his burden of proving he was eligible to seek cancellation of removal because the documents used to inform the modified categorical analysis in that case were inconclusive as to whether his

---

[13] Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).

15

prior conviction was a CIMT).[14]  "The fact that [the alien] is not to blame for the ambiguity surrounding his criminal conviction does not relieve him of his obligation to prove eligibility for discretionary relief."  Id. at 1290.[15]

We are bound by Garcia "absent en banc reconsideration or a superseding contrary decision by the Supreme Court."  Leatherwood v. Allbaugh, 861 F.3d 1034, 1042 n.6 (10th Cir. 2017) (internal quotation marks omitted).  Lucio-Rayos contends that the Supreme Court's decision in Moncrieffe v. Holder, 569 U.S. 184 (2013), has overruled Garcia.  Other circuits are divided as to whether Moncrieffe applies to the

[14] We disagree with Lucio-Rayos that Garcia involved an improper fact-based, rather than elements-based, inquiry into whether Garcia's prior assault conviction involved the requisite mens rea to qualify as a CIMT.  But, in any event, that does not affect Garcia's holding that it is the alien who bears the burden of proving that he has not been convicted of a CIMT and, thus, is eligible for discretionary relief from removal. Lucio-Rayos's argument appears to be that the question of whether his prior theft conviction qualifies as a CIMT is a legal, rather than a factual, question and so the BIA erred in relying on whose burden of proof it is to show Lucio-Rayos is eligible for discretionary relief from removal.  But the modified categorical approach relies on documentary evidence to determine of which of the several offenses set forth in a divisible statute the alien was convicted.  See Marinelarena v. Sessions, 869 F.3d 780, 791 (9th Cir. 2017) (noting this "is, if not factual, at least a mixed question of law and fact"); Le v. Lynch, 819 F.3d 98, 105 (5th Cir. 2016) ("When an alien's prior conviction is at issue, the offense of conviction is a factual determination, not a legal one.").  So burdens of proof are relevant and can be dispositive.  See Marinelarena, 869 F.3d at 789-90, 792; cf. Sauceda v. Lynch, 819 F.3d 526, 533-34 (1st Cir. 2016) (stating that "the categorical approach—with the help of its modified version— answers the purely 'legal question of what a conviction necessarily established.  As a result, the question of the allocation of the burden of proof when the complete record of conviction is present does not come into play." (emphasis added; quoting Mellouli v. Lynch, —U.S.—, 135 S. Ct. 1980, 1987 (2015))).

[15] Other circuits have reached similar conclusions.  See, e.g., Marinelarena, 869 F.3d at 788, 792 (9th Cir.); Syblis v. Att'y Gen., 763 F.3d 348, 355-57 (3d Cir. 2014) (joining Fourth, Seventh, Ninth, and Tenth Circuits, citing cases); Salem v. Holder, 647 F.3d 111, 116 (4th Cir. 2011).

16

circumstances at issue here, where the documents relevant to the modified categorical analysis are inconclusive as to the alien's offense of conviction. Compare Marinelarena, 869 F.3d at 788-92 (9th Cir.) (holding Moncrieffe does not apply to question of whether noncitizen met her burden of showing she was not convicted of a controlled substance offense that would disqualify her from seeking relief from removal where documents informing the modified categorical analysis are inconclusive), with Sauceda, 819 F.3d at 528, 530-32 (1st Cir.) (holding Moncrieffe governs question of whether noncitizen was convicted of domestic violence offense that would disqualify him from seeking relief from removal, where documents relevant to modified categorical analysis are inconclusive). Lucio-Rayos and Amici specifically argue here that, after Moncrieffe, notwithstanding any ambiguity in the noncitizen's record of conviction, the prior conviction is presumed to have been for the least conduct criminalized under the statute of conviction, which presents a legal, rather than a factual, question for which burdens of proof are irrelevant. Like the Ninth Circuit, we conclude Moncrieffe does not apply to the question at issue here.

In Moncrieffe, the Supreme Court considered whether a noncitizen's prior Georgia drug conviction qualified as an "aggravated felony" under the INA, which would warrant the noncitizen's removal from the United States. 569 U.S. at 187. It is the Government burden to establish, by clear and convincing evidence, that the noncitizen has a prior conviction that warrants his removal. See Cruz-Garza v. Ashcroft, 396 F.3d 1125, 1130 (10th Cir. 2005) (citing 8 U.S.C. § 1229a(c)(3)(A)). That differs from the issue presented in this case, where it is the noncitizen's burden

17

to establish, by a preponderance of the evidence, that he is eligible to seek cancellation of removal. See 8 U.S.C. § 1229a(c)(4)(A); see also 8 C.F.R. § 1240.8(d). Although Moncrieffe stated that its analysis in that removal case "is the same" in the context of cancellation of removal, 569 U.S at 191 n.4, "that is true, so far as the discussion in Moncrieffe goes: '[c]onviction is the relevant statutory hook' whether determining removability or eligibility for relief from removal," Marinelarena, 869 F.3d at 790 (quoting Moncrieffe, 569 U.S. at 191). In either context, then, a court applies the categorical approach generally, focusing on the elements of the offense of conviction rather than the actual conduct underlying the offense. "But Moncrieffe did not discuss the differences in the burden of proof in those two contexts; it had no reason to." Marinelarena, 869 F.3d at 790.

In Moncrieffe, then, the Supreme Court considered whether the noncitizen's prior Georgia drug conviction categorically matched the relevant federal definition of "aggravated felony" at issue there, possession of more than a small amount of a controlled substance with the intent to distribute it for remuneration. 569 U.S. at 193-94. Unlike here, there was no question as to what offense Moncrieffe was convicted under Georgia law; he was convicted of possession of a controlled substance with the intent to distribute it. Id. at 192. The question at issue in Moncrieffe, in applying the categorical approach, was how Georgia courts defined the elements of that offense, id. at 193-94, clearly a legal question. Focusing its categorical analysis on the least conduct criminalized under the state statute, Moncrieffe noted that Georgia courts applied the state statute to possession of small

18

amounts of controlled substances for distribution without remuneration. Id. 194. A conviction under that Georgia statute, then, did not categorically meet the federal definition. Id. at 194-95.

Unlike in Moncrieffe, here we do not know of which theft offense set forth in WMC 6-3-1(A) Lucio-Rayos was convicted. That requires us to resort to the modified categorical approach. See Descamps v. United States, 133 S. Ct. 2276, 2283-85 (2013). The Tenth Circuit's decision in Garcia addressed the modified categorical approach; Moncrieffe did not. Furthermore, as previously mentioned, the determination of which offense listed in a divisible, multi-offense statute the petitioner was convicted is a question of fact or at least a question of law and fact, see Marinelarena, 869 F.3d at 791 (9th Cir.); Le, 819 F.3d at 105 (5th Cir.), that turns on findings made from the limited category of documents relevant to the modified categorical approach, see Descamps, 133 S. Ct. at 2283-85. The burden of proof remains relevant to that determination: "It is well-established that the party who bears the burden of proof loses if the record is inconclusive on a critical point." Marinelarena, 869 F.3d at 789.

For these reasons, then, we cannot say that Moncrieffe "indisputeabl[y]" overruled Garcia. See Barnes v. United States, 776 F.3d 1134, 1147 (10th Cir. 2015). Therefore, we remain bound to apply Garcia here. Therefore, "[b]ecause it is unclear from [Lucio-Rayos's] record of conviction whether he committed a CIMT, we conclude he has not proven eligibility for cancellation of removal." Garcia, 584 F.3d at 1290.

19

**5. The "petty theft" exception does not restore Lucio-Rayos's eligibility for cancellation of removal**

Lastly, Lucio-Rayos contends that if, as we have concluded, his Westminster theft conviction is a CIMT which makes him ineligible for cancellation of removal, he nevertheless meets an exception to ineligibility available for "petty offenses." 8 U.S.C. § 1229b(b)(1)(C) provides that Lucio-Rayos is ineligible for cancellation of removal if his Westminster theft conviction is a CIMT as defined under either 8 U.S.C. § 1182(a)(2)(A)(i)(I) or § 1227(a)(2)(A)(i). But Lucio-Rayos contends that his Westminster theft conviction meets the "petty offense" exception listed in 8 U.S.C. § 1182(a)(2)(A)(ii)(II), which applies when an alien has "committed only one crime if"

> the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).

Lucio-Rayos's theft offense was punishable by imprisonment "for a period not to exceed 365 days." WMC 1-8-1(A). Even if Lucio-Rayos's theft conviction met this "petty offense" exception, however, the exception would only apply to CIMTs defined under 8 U.S.C. § 1182. There is no similar exception for CIMTs defined by

20

8 U.S.C. § 1227(a)(2)(A)(i).[16]  In such a situation, the BIA has held that § 1182's "petty offense" exception does not prevent an immigrant's CIMT conviction from disqualifying him from eligibility for discretionary cancellation of removal under § 1227.  See In re Cortez Canales, 25 I&N Dec. 301, 303-04 (BIA 2010); see also Mancilla-Delafuerte v. Lynch, 804 F.3d 1262, 1265-66 (9th Cir. 2015); Hernandez v. Holder, 783 F.3d 189, 191-96 (4th Cir. 2015).

## III. CONCLUSION

For the foregoing reasons, we DENY Lucio-Rayos's petition for review and uphold the BIA's ultimate determination that he is not eligible for cancellation of removal.

---

[16] 8 U.S.C. § 1227(a)(2)(A)(i) includes CIMTs "for which a sentence of one year or longer may be imposed."  See Andrade-Zamora, 814 F.3d 945, 950-51 (8th Cir. 2016).

21