FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

**October 12, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

GURJANT SINGH,

> Petitioner,

v.

MERRICK B. GARLAND,
Attorney General of the United States,

> Respondent.

Nos. 19-9574 & 22-9505
(Petitions for Review)

———————————————————

**ORDER AND JUDGMENT**[*]
———————————————————

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
———————————————————

Gurjant Singh, a native and citizen of India, seeks review of a decision by the

Board of Immigration Appeals (BIA) that dismissed his appeal from a removal order

entered by an immigration judge (IJ).  Singh also seeks review of the BIA's denial of

his motion to reopen his immigration proceedings.  We deny review of the removal

order.  But we grant review of the order denying Singh's motion to reopen because

———————————————

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the BIA relied on an incorrect legal standard to deny it, and we remand to the BIA for it to reconsider Singh's motion under the correct legal standard.

## I.  Background

Singh entered the United States in 2018 without valid entry documents.  The Department of Homeland Security (DHS) issued Singh a notice to appear in immigration court, charging him with removability under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I).  The notice to appear was dated September 27, 2018, and listed the date and time for Singh's initial removal proceedings as "TBD."  No. 19-9574, Admin. R., vol. 2 at 505.

Singh initially appeared in immigration court on November 8, 2018.  In the subsequent immigration proceedings Singh "acknowledge[d] the receipt of a purported" notice to appear, *id.*, vol. 1 at 76, but contended the notice was "legally faulty under [*Pereira v. Sessions*, 138 S. Ct. 2105 (2018)]," *id.* at 77.  He also admitted the allegations in the notice and conceded the charges of removability.  But he applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), claiming members of the Congress Party in India persecuted him because they opposed his membership in the Shiromani Akali Dal (Mann) Party.

In connection with his application, Singh submitted a statement and some supporting documents.  In his statement, Singh asserted members of the Congress Party attacked him three times.  Singh claimed the first attack took place in May 2017, when members of the Congress Party waited for him outside a temple and "started beating [him] and told [him] to leave [his political] party, otherwise, they

would kill [him]." *Id.*, vol. 2 at 490. Singh claimed the second attack took place in November 2017, when members of the Congress Party followed him as he was riding his bike, "surrounded [him], and started beating [him]. They hit [him] with a hockey stick, a bat, and tore [his] clothes too. They dragged [him] on the road, and . . . pressed [his] throat too." *Id.* Singh claimed the third attack happened in March 2018, when members of the Congress Party kidnapped him as he was putting up posters for a drug addiction camp. He managed to escape when the car they put him in stopped for a railroad track, running away as the kidnappers drove after him and shot at him. Singh stated that he tried to make a complaint to the police "but they refused to write the complaint because they are under the influence of the ruling Congress Party." *Id.* at 492.

One of the supporting documents Singh submitted purported to be a letter from a doctor. The letter claimed Singh had been admitted to the hospital for five days in May 2017 "with multiple injuries with contusion and bruises," and again for six days in November 2017 "with multiple injuries by police torture." *Id.*, vol. 1 at 163.

At his merits hearing, Singh testified about the three alleged attacks. He stated that during the November 2017 attack, "[t]hey hit me on the nose and my nose was bleeding, and they hit me on the legs with the baseball bats, and they had dragged me on the road." *Id.* at 99. Regarding the March 2018 attack, he stated:

> [F]irst they beat us up, and then they put us in the car. And in the car, there was drugs in a packet and there were—there was money, a stack of money, and there was a revolver. And they said, come, join our party

3

and you're going to sell these drugs, and this is a weapon so you have no fear, and then you would have more money coming in.

*Id.* at 106–07.  Singh did not testify he had been hospitalized following any of the attacks.

The IJ denied Singh's asylum "claim based, in part, on an adverse credibility finding." *Id.* at 2.  The IJ found Singh lacked credibility for a few reasons.  First, "at numerous times," Singh "was unresponsive to the questions given to him." *Id.* at 49. "Instead of answering the question, [Singh] wanted to basically state what he wished to answer and not the question given to him.  That included questions by his counsel, questions by the Government, and also from the Court." *Id.*  Second, the IJ found Singh's testimony about the weapons used in his alleged attacks to be inconsistent with his credible fear interview and his written statement.  Third, the IJ found Singh's testimony to be inconsistent with the doctor's letter describing Singh's injuries and hospitalization.  And fourth, the IJ noted Singh did not mention seeing drugs and stacks of money in the car during the third alleged attack in his credible fear interview or his written statement.

The BIA affirmed the adverse credibility finding because the IJ based it "on inconsistencies in the record." *Id.* at 2.  It discussed the letter "purportedly from a medical doctor in India who report[ed] that [Singh] was hospitalized twice due to injuries caused 'by police torture' for several days." *Id.* at 3.  And it observed that "in testimony at his removal hearing and in testimony at [his] credible fear interview, [Singh] omitted any reference to having sought medical treatment for injuries or

torture due to his encounters with the Congress Party members or with the Indian police." *Id.* (citation omitted). The BIA then affirmed the IJ's denial of Singh's applications for asylum, withholding of removal, and CAT protection because Singh failed to meet his burden of proof with credible evidence.

Singh petitioned this court for review of the BIA's order in case No. 19-9574. He also filed a motion with the BIA seeking to reopen his case, and he sought an abeyance in case No. 19-9574 pending the BIA's adjudication of the motion to reopen. Singh based his motion to reopen on alleged ineffective assistance of counsel. The BIA denied Singh's motion to reopen because Singh failed to show that the "discrepancies and omissions" that led to the dispositive adverse credibility determination were "linked to the performance of his prior attorney." No. 22-9505, Admin. R., vol. 1 at 100. Singh petitions for review of the BIA's denial of his motion to reopen in case No. 22-9505. We consolidated case No. 19-9574 and case No. 22-9505 by order dated February 9, 2022.

## II. Discussion

### A. The BIA's Denial of Singh's Application for Asylum, Withholding of Removal, and CAT Protection

#### 1. Alleged Defects in the Notice to Appear

Under applicable regulations, "(1) the filing of a 'charging document' creates jurisdiction, (2) a charging document consists of a notice to appear, and (3) a notice to appear must include the date and time where practicable." *Lopez-Munoz v. Barr*,

941 F.3d 1013, 1015 (10th Cir. 2019) (citing 8 C.F.R. §§ 1003.13, 1003.14(a), 1003.18).

Singh preserves an argument that because the notice to appear failed to include the date and time of his removal proceedings, the IJ lacked jurisdiction to conduct them. But Singh concedes, as he must, that under our precedent such a defect does "not preclude jurisdiction." No. 19-9574, Pet'r Opening Br. at 37 (citing *Lopez-Munoz*, 941 F.3d at 1015).

Singh argues that even if the defects in the notice to appear did not undermine the IJ's jurisdiction, the removal proceedings still should have been dismissed due to the defects. *Id.* at 39 (citing *Martinez-Perez v. Barr*, 947 F.3d 1273, 1279 (10th Cir. 2020). In *Martinez-Perez*, we observed that "the requirements relating to notices to appear are non-jurisdictional, claim-processing rules" and that "just as with every other claim-processing rule, failure to comply with that rule may be grounds for dismissal of the case." 947 F.3d at 1278–79 (internal quotation marks omitted). But Singh did not make this argument to the IJ or the BIA.

Before the IJ, Singh argued the notice to appear was "legally faulty under *Pereira*," and stated he "kn[e]w the [BIA's] position on that." No. 19-9574, Admin. R., vol. 1 at 77 (typeface normalized). Before the BIA, Singh contended that the IJ incorrectly stated that he acknowledged receipt of the notice to appear. Singh explained that in his proceedings before the IJ he "acknowledged having received a 'purported [notice to appear]'" that was legally faulty under *Pereira*, and he "acknowledged the [BIA's] position in *Matter of Bermudez-Cota*, 27 I&N Dec. 441

6

(BIA 2018), but preserved that jurisdictional issue." *Id.* at 10 n.1.  He further explained he was preserving that same jurisdictional issue before the BIA, and "[s]hould a Petition for Review to the 10th Circuit be required," he would make "detailed arguments attacking *Bermudez-Cota* and urging that court to fully follow *Pereira.*"  *Id.*[1]

Although Singh's failure to present detailed arguments to the BIA left his position murky, the BIA concluded Singh "appear[ed] to challenge the Immigration Judge's jurisdiction in light of *Pereira.*"  *Id.* at 7 n.1.  This is not the argument Singh advances in this court—namely, that the IJ should have dismissed the removal proceedings because the DHS failed to comply with a mandatory claims-processing rule.  *See* No. 19-9574, Pet'r Reply Br. at 9 ("[T]his is a distinct argument from the jurisdictional questions implicated by *Pereira . . . .*").  Under our precedent, "[i]t is not enough to go through the procedural motions of a BIA appeal, or to make general statements in the notice of appeal to the BIA, or to level broad assertions in a filing before the Board."  *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010)

---

[1] "In *Pereira*, the Court decided only whether a defective notice to appear had interrupted a noncitizen's continuous presence in the United States." *Lopez-Munoz*, 941 F.3d at 1018.  *Pereira* "did not address . . . whether a defect in the notice to appear would preclude jurisdiction over the removal proceedings." *Id.*  But various aliens, including the respondent in *Matter of Bermudez-Cota*, argued that under *Pereira*'s reasoning, failure to include the time and place of the hearing in a notice to appear rendered the notice "defective for all purposes" such that the notice could not "vest jurisdiction with the Immigration Judge." 27 I. & N. Dec. at 443.  As noted above, this court later "declined to treat *Pereira* as a limitation on an immigration judge's jurisdiction." *Lopez-Munoz*, 941 F.3d at 1018.

(internal quotation marks omitted). Instead, "an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court." *Id.* Singh's presentation of *an* argument for dismissal based on the notice to appear was therefore insufficient to preserve the claims-processing argument he seeks to advance in this court. *See id.* at 1238 ("[P]resenting a *conclusion* or *request for relief* to the BIA isn't enough to exhaust every potential *argument* for reaching that conclusion or winning that relief.").

### 2. The IJ's Alleged Bias

Singh argues the proceedings before the IJ failed to comport with due process because the IJ exhibited bias.

Aliens are "entitled to a full and fair removal hearing that comports with due process." *Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017). The right to a removal hearing that comports with due process includes the right to "a fair and impartial decision-maker." *Id.* To prevail on his due process claim, Singh "must establish both that he was deprived of due process and that that deprivation prejudiced him." *Id.* An IJ must recuse if (1) the IJ "has a personal, rather than a judicial, bias stemming from an extrajudicial source which resulted in an opinion on the merits on some basis other than what the immigration judge learned from . . . participation in the case," (2) the IJ's judicial conduct demonstrates "such pervasive bias and prejudice" that it amounts to "bias against [the] party," or (3) "the IJ has an inherent bias." *Id.* (internal quotation marks omitted). We review Singh's due process claim de novo. *Id.*

Singh argued to the BIA that "the IJ was set on determining [Singh] lacked credibility from the beginning, insisting on construing not only [Singh's] statements, but also Counsel's questions as demonstrating a lack of credibility." No. 19-9574, Admin. R., vol. 1 at 11. To support this argument, Singh cited a single exchange where he suggested his father had died from persecution. *See id.* at 90 ("[Y]our father's deceased. How did he die? . . . The way it has happened to me, the same thing happened to my father also."). The IJ pointed out that Singh had not previously asserted a claim of persecution related to his father's death and noted that making such a claim with "no prior basis" could "open[] a door to lack of credibility." *Id.* at 92. Singh later changed his testimony and asserted that his father died of a drug overdose.

In this court, Singh also cites an exchange regarding the type of weapon used in the alleged November 2017 attack. In a written statement, Singh had claimed his attackers hit him "with a hockey stick, a bat." *Id.*, vol. 2 at 490. But at the hearing, Singh testified they hit him "with the baseball bats." *Id.*, vol. 1 at 99. The IJ expressed skepticism with this testimony, noting that Singh had not mentioned baseball bats during his credible fear interview, that he did not "think they play baseball in India," *id.* at 101, and that "every time—many of these cases, they always mention baseball bats," *id.* at 102. The IJ also engaged Singh in the following exchange regarding the nature of the weapon in question:

IJ:           "Sir, what kind of devices were these?"

9

| | |
|---|---|
| Singh: | "Well, it was the same thing, which was over there baseball and hockey." |
| IJ: | "Okay.  What were these devices used for normally, other than attacking you?  What are they normally used for?" |
| Singh: | "Well, no, mostly the people would keep it in their cars to beat up the people." |
| IJ: | "So people just drive around India carrying around clubs just to beat on people, sir?  Do you have one yourself?" |
| Singh: | "Yes." |
| IJ: | "Okay.  Apparently everyone drives around with a club." |

*Id.* at 102–03.

We conclude that these colloquies do not evince impermissible bias.  To be sure, they portend the IJ's ultimate conclusion that Singh did not testify credibly. But the IJ grounded his comments in Singh's testimony and in inconsistencies between his testimony and his prior statements.  *Cf. Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").  We therefore agree with the BIA "that the Immigration Judge was not biased and did not pre-judge [Singh's] case, and that [Singh's] hearing comported with due process." No. 19-9574, Admin. R., vol. 1 at 3.[2]

---

[2] Because he did not advance them before the BIA, we lack jurisdiction to consider Singh's arguments that (1) the IJ was biased because the immigration court

### 3. The Adverse Credibility Finding

In assessing a witness's credibility, the IJ should consider the totality of the circumstances and may base an adverse credibility finding on inconsistencies between a witness's testimony and other evidence in the record. *See* 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C), 1231(b)(3)(C). "The IJ's credibility assessment is a factual finding, and will ordinarily be given great weight." *Htun v. Lynch*, 818 F.3d 1111, 1118–19 (10th Cir. 2016) (citation and internal quotation marks omitted). "As a factual finding, the IJ's credibility determination is reviewed for substantial evidence and should not be reversed unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 1119 (internal quotation marks omitted). Under the substantial evidence standard, "[o]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (internal quotation marks omitted); *see also Diallo v. Gonzales*, 447 F.3d 1274, 1283 (10th Cir. 2006) (noting that under the substantial evidence standard, this court "may not weigh the evidence, and . . . will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable" (internal quotation marks omitted)).[3]

---

that the IJ sits in grants asylum to Indian asylum seekers at a lower rate than the national average, and (2) the IJ's manner of questioning deprived him of due process. *See Garcia-Carbajal*, 625 F.3d at 1237.

[3] The petition for review in case No. 19-9574 is from a single BIA member's brief order under 8 C.F.R. § 1003.1(e)(5). We review that order as the final agency

The BIA found "no clear error in the Immigration Judge's adverse credibility determination insofar as it [was] based on inconsistencies in the record," citing as an example the inconsistencies between Singh's testimony and the doctor's letter, which Singh submitted in support of his claim. No. 19-9574, Admin. R., vol. 1 at 2–3. The BIA noted the doctor reported that Singh "was hospitalized twice due to injuries caused 'by police torture' for several days in May and November 2017." *Id.* at 3 (quoting *id.* at 163). But it observed that "in testimony at his removal hearing and in testimony at a September 25, 2018, credible fear interview, [Singh] omitted any reference to having sought medical treatment for injuries or torture due to his encounters with the Congress Party members or with the Indian police." *Id.* (citation omitted). And it found significance in Singh's failure to offer a satisfactory explanation or additional evidence to overcome this "major discrepancy, which goes to the heart of [Singh's] claim" and "casts doubt on [Singh's] claim regarding who harmed him, as well as when and to what extent he was allegedly harmed." *Id.* (brackets and internal quotation marks omitted).

Singh argues "substantial evidence does not support the IJ's adverse credibility finding." No. 19-9574, Pet'r Reply Br. at 18. To support this argument, Singh

---

determination, limiting our review to the issues specifically addressed therein. *Diallo*, 447 F.3d at 1279. And where the BIA affirms the IJ's credibility determination on clear-error review under 8 C.F.R. § 1003.1(d)(3)(i), we consider whether substantial evidence supports the reasons the BIA found no clear error in the IJ's credibility determination. *See Htun*, 818 F.3d at 1118–20; *see also Lasu v. Barr*, 970 F.3d 960, 966 (8th Cir. 2020) ("[W]e review the BIA's clear error determination for substantial evidence.").

asserts the IJ "cherry-picked inconsistencies" and placed insufficient weight on the fact that "most of the record indicates consistent testimony by [Singh] throughout the asylum process." *Id.* He also asserts the IJ placed too much weight on omissions in his testimony.

We reject this argument because "[i]t is not our prerogative to reweigh the evidence, but only to decide if substantial evidence supports the agency's decision." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (brackets and internal quotation marks omitted). The BIA noted material discrepancies between Singh's account of the attacks he allegedly suffered and the only other account in the record discussing those attacks, the doctor's letter. That some of the discrepancies sprang from omissions in Singh's testimony does not help Singh's cause because omissions that "defy common sense" can support adverse credibility findings. *Ismaiel v. Mukasey*, 516 F.3d 1198, 1205 (10th Cir. 2008). And it defies common sense for Singh to describe the alleged attacks yet fail to mention that two of them had resulted in multi-day hospitalizations or that they involved police torture. A reasonable adjudicator could base an adverse credibility finding on the discrepancies in the record, and we therefore cannot disturb the agency's finding. *See Gutierrez-Orozco v. Lynch*, 810 F.3d 1243, 1245 (10th Cir. 2016) ("To obtain reversal of factual findings, [an alien] must show the evidence he presented was so compelling that no

reasonable factfinder could find as the BIA did." (internal quotation marks omitted)).[4]

### 4.  The BIA's Rejection of Singh's CAT Claim

Singh argues in this court that the IJ erred by failing "to consider evidence in the Record that [he] would be tortured upon removal to India," namely, country conditions reports that he submitted.  No. 19-9574, Pet'r Opening Br. at 33.  But Singh did not make this argument to the BIA.  He instead argued to the BIA that the IJ improperly used these country conditions reports to support its adverse credibility determination.  *See* No. 19-9574, Admin. R., vol. 1 at 14–16.  Because he did not present the failure-to-consider-evidence argument to the BIA, we lack jurisdiction to consider it.  *See Garcia-Carbajal*, 625 F.3d at 1237.

## B.  The BIA's Denial of Singh's Motion to Reopen

### 1.  Legal Background and Standard of Review

"Aliens in removal proceedings enjoy a Fifth Amendment right to effective representation by their retained counsel."  *Molina v. Holder*, 763 F.3d 1259, 1263 (10th Cir. 2014).  "In recognition of the right to due process, the [BIA] has decided that ineffective assistance of counsel is a valid ground for reopening a deportation case in egregious circumstances."  *Osei v. INS*, 305 F.3d 1205, 1208 (10th Cir. 2002) (internal quotation marks omitted).  So in *Matter of Lozada*, 19 I. & N. Dec. 637

---

[4] Because he did not advance them before the BIA, we lack jurisdiction to consider Singh's arguments that (1) the IJ applied an improper legal standard in determining credibility, and (2) the IJ erred by relying on the doctor's letter.  *See Garcia-Carbajal*, 625 F.3d at 1237.

(B.I.A. 1988), the BIA "created . . . a mechanism for hearing due-process based claims of ineffective assistance of counsel." *Osei*, 305 F.3d at 1208. Under *Matter of Lozada*, the alien must file a motion to reopen that satisfies certain "procedural requirements"[5] and must "show that he was prejudiced by the action or inaction of his counsel." *Matter of Compean*, 25 I. & N. Dec. 1, 1–2 (B.I.A. 2009) (citing *Matter of Lozada*, 19 I. & N. Dec. at 639–40). "To establish prejudice, an alien must show a reasonable likelihood that the outcome would have been different but for the attorney's deficient performance." *Molina*, 763 F.3d at 1263 (internal quotation marks omitted); *see also Matter of Melgar*, 28 I. & N. Dec. 169, 171 (B.I.A. 2020) (holding that to establish prejudice under *Matter of Lozada*, an alien must show "a reasonable probability" that he or she would have prevailed on the claim "but for" the attorney's mistakes). Where an alien makes the required showing under *Matter of*

---

[5] The procedural requirements are as follows:

First, the motion should be supported by an affidavit of the allegedly aggrieved applicant attesting to the relevant facts. Second, before the allegation is presented to the [BIA], the former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel, or report of counsel's failure or refusal to respond should be submitted with the motion. Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motions should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not.

*Osei*, 305 F.3d at 1209 n.2 (internal quotation marks omitted).

*Lozada*, the BIA holds that the alien satisfies the requirements for reopening. *See Osei*, 305 F.3d at 1209–10.

When the issue of ineffective representation is "raised in a motion to reopen, we review the Board's decision under an abuse-of-discretion standard." *Molina*, 763 F.3d at 1263; *see also Mena-Flores v. Holder*, 776 F.3d 1152, 1169 (10th Cir. 2015) ("[W]e consider whether the agency abused its discretion" "[i]n rejecting [an alien's] claim of ineffective representation" brought through a motion to reopen.); *Galvez Piñeda v. Gonzales*, 427 F.3d 833, 838 (10th Cir. 2005) ("We review the BIA's decision on a motion to reopen for an abuse of discretion." (internal quotation marks omitted)).[6] "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Qiu v. Sessions*, 870 F.3d 1200, 1202 (10th Cir. 2017) (internal quotation marks omitted). "Moreover, committing a legal error or making a factual finding that is not supported by substantial record evidence is necessarily an abuse of discretion." *Id.* (brackets and internal quotation marks omitted).

---

[6] Without addressing this precedent or citing any contrary precedent on point, Singh argues for de novo review. We are bound by our precedent that dictates an abuse-of-discretion standard of review. *See United States v. Lira-Ramirez*, 951 F.3d 1258, 1260–61 (10th Cir. 2020).

## 2. Application

Singh argues the BIA committed legal error in denying his motion to reopen because it failed to cite or apply the prejudice standard from *Matter of Lozada* and its progeny—i.e., that the alien "show a reasonable likelihood that the outcome would have been different," *Molina*, 763 F.3d at 1263 (internal quotation marks omitted)— and instead applied an elevated standard of prejudice from *Matter of F-S-N-*, 28 I. & N. Dec. 1, 3 (B.I.A. 2020)—i.e., that the alien "overcome" a prior adverse credibility determination. We agree.

The BIA correctly noted that to succeed on his ineffective assistance of counsel claim, Singh had to "demonstrate[] that he was prejudiced by the actions of his former counsel such that the proceedings were fundamentally unfair." No. 22-9595, Admin. R., vol. 1 at 100. But while the BIA supported this statement with a citation to this court's decision in *Mena-Flores*, the BIA did not acknowledge *Mena-Flores*'s holding that "the prejudice prong requires a reasonable likelihood that the outcome would have been different but for counsel's deficient performance." 776 F.3d at 1169 (internal quotation marks omitted). The BIA instead cited *Matter of F-S-N-* and held that Singh did not "demonstrate that his prior counsel's performance was prejudicial to him" because he had "not *overcome* the prior adverse credibility determination." No. 22-9505, Admin. R., vol. 1 at 101 (emphasis added).

The BIA did not elucidate the showing needed to "overcome the prior adverse credibility determination." *Id.* So we look to the case it relied on, *Matter of F-S-N-*, for guidance. *See Berdiev v. Garland*, 13 F.4th 1125, 1131–32 (10th Cir. 2021)

17

(looking to cases cited by the BIA to glean the test it employed where the BIA did not "elaborate on the legal standard[] it applie[d]").

Matter of F-S-N- did not involve a claim of ineffective assistance of counsel. It involved a motion to reopen based on new evidence, and the BIA held that to succeed in that case, the alien had to show "the new evidence offered would likely change the result in the case." 28 I. & N. Dec. at 3 (citing *INS v. Abudu*, 485 U.S. 94, 110 (1988) and *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (B.I.A. 1992)). Because the alien's case had been "denied based on an adverse credibility finding," the BIA observed that to meet this standard the alien had to "either overcome the prior [adverse credibility] determination or show that the new claim [was] independent of the evidence that was found to be not credible." *Id.* It followed this remark with a footnote that stated: "To rehabilitate a claim that was denied based on an adverse credibility finding, [an alien] must present previously unavailable evidence that is independent of the prior claim or refutes the validity and finality of the credibility determination in the prior proceeding." *Id.* at 3 n.3. We read *Matter of F-S-N-* as applying the "would likely change the result" standard when it indicated the alien had to "overcome" an adverse credibility finding. *Id.* at 3.

Under BIA precedent cited in *Matter of F-S-N-*, new evidence would not likely change the result in the case if the BIA's "decision on the appeal *would be the same* even if the proffered evidence were already part of the record on appeal." *Matter of Coelho*, 20 I. & N. Dec. at 473 (emphasis added). In contrast, the "'reasonable likelihood' standard" that applies to a claim of ineffective assistance of counsel does

18

not "require an alien to show . . . that he 'would' have obtained relief or the outcome of the proceeding 'would' have been different." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004).

The BIA applied an incorrect legal standard in deciding whether Singh had been prejudiced by his attorney's alleged ineffective assistance because it required him to "overcome" the adverse credibility determination to show prejudice. The BIA therefore abused its discretion in denying Singh's motion to reopen. *See Qiu*, 870 F.3d at 1202 ("[C]ommitting a legal error . . . is necessarily an abuse of discretion." (internal quotation marks omitted)). On remand, the BIA should consider whether there is "a reasonable likelihood that the outcome would have been different but for counsel's deficient performance." *Mena-Flores*, 776 F.3d at 1169 (internal quotation marks omitted).

## C. Cumulative Error

Singh argues for the first time in this court that the IJ violated his due process rights through cumulative error. Because Singh did not advance this argument before the BIA, we lack jurisdiction to consider it. *See Garcia-Carbajal*, 625 F.3d at 1237.

### III. Conclusion

In case No. 19-9574, we deny Singh's petition for review. In case No. 22 9505, we grant Singh's petition for review, vacate the BIA's order denying his motion to reopen, and remand to the BIA for it to consider Singh's motion to reopen by applying the correct legal standard consistent with this order and judgment.

We deny Singh's motion to supplement the record in case No. 19-9574 as moot because the documents he sought to have included in the record were subsequently included in the record in these consolidated cases via the filing of the administrative record in case No. 22-9505.

Entered for the Court

Carolyn B. McHugh
Circuit Judge