FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**August 12, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JACQUELINE SANCHEZ MAYORGA;
JOHN DOE,

      Petitioners,

v.

PAMELA J. BONDI,[*]
United States Attorney General,

      Respondent.

No. 24-9559
(Petition for Review)

_____

### ORDER AND JUDGMENT[**]

_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.

_____

Jacqueline Sanchez Mayorga and her minor son, John Doe, natives and

citizens of Colombia, petition for review of the Board of Immigration Appeals'

---

[*] On February 5, 2025, Pamela Bondi became Attorney General of the United States.  Consequently, her name has been substituted as Respondent, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

("Board" or "BIA") decision affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny review.

## I.  BACKGROUND

### A. *Immigration Court Hearing*

At the hearing before the IJ, Ms. Sanchez Mayorga testified as follows.

In Colombia, she lived with Juan from 2013 to 2018.  Angry and jealous, he psychologically and physically mistreated her.  Unable to find employment, he disliked that Ms. Sanchez Mayorga worked with other men.  He would get drunk and fight other people.  Ms. Sanchez Mayorga never complained to authorities.

In May 2017, he pushed Ms. Sanchez Mayorga, causing her to fall against a window and cut her wrist on broken glass.  At the hospital, staff suspected a suicide attempt.  She did not correct that impression because she wanted to continue the relationship with Juan.  But in January 2018, the couple broke up.

In February 2018, Ms. Sanchez Mayorga's television and money and her son's belongings were stolen from her apartment, the only one targeted in the building.  The apartment showed no signs of forced entry.  Believing Juan was responsible, she complained to police, who told her to contact a prosecutor.  The prosecutor took her report, but nothing further resulted.

After splitting with Juan, Ms. Sanchez Mayorga saw him only once, at the end of 2018. By then, she had a new partner and had moved. She heard in 2019 that Juan had asked others where she was living and working.

Remaining afraid of Juan, Ms. Sanchez Mayorga and John Doe entered the United States in February 2022.

## B. *IJ Proceeding*

Petitioners applied for asylum, withholding of removal, and CAT relief. Ms. Sanchez Mayorga appeared at the IJ hearing without counsel.[1] She sought asylum based on her membership in a particular social group ("PSG"), telling the IJ, "I put that because of the family violence, like domestic violence." R. at 170.

The IJ found Ms. Sanchez Mayorga to be credible but concluded she did not qualify for asylum or withholding of removal because she had not shown that Juan had harmed her on account of a protected category. The IJ found that the harms experienced were the criminal acts of a private actor and stated that "[t]he 10th Circuit and the Board . . . have consistently held that those targeted for violence by criminals are not typically being targeted because of membership in any particular social group or other protected ground." R. at 85. The IJ also found that Ms. Sanchez Mayorga did not show that government officials would be unable or unwilling to protect her in Colombia. As for CAT relief, the IJ found that

---

[1] Petitioners obtained counsel for their appeal to the Board and their petition to this court.

Ms. Sanchez Mayorga did not establish a likelihood of torture by or with the consent of a government official in Colombia.

### C. *Board Decision*

The Board upheld the IJ's decision. It concluded the IJ sufficiently developed the record. It rejected Petitioners' contention that the IJ should have considered membership in other proposed groups. The Board could not find clear error in the IJ's findings regarding Juan's motivations or the Colombian government's ability and willingness to protect Ms. Sanchez Mayorga. It found the IJ applied the correct legal standards for the CAT claim and noted that Petitioners did not identify evidence undermining the IJ's factual findings on that claim. Finally, the Board rejected Petitioners' due process arguments, concluding they failed to show prejudice.

## II. **DISCUSSION**

Because a single Board member affirmed in a brief order, we review the Board's opinion rather than the IJ's decision. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.*[2]

---

[2] Petitioners attached documents to their opening brief that were not part of the administrative record. The Government moves to strike the brief and attached documents. Petitioners oppose the Government's motion and request that the court take judicial notice of the documents. We grant the Government's motion to strike the documents attached to the opening brief, and we deny the Petitioners' request to take judicial notice. Except in narrow circumstances not relevant here, our review is limited to "the administrative record on which the order of removal is based."

We review legal questions de novo. *See Ting Xue v. Lynch*, 846 F.3d 1099, 1104 (10th Cir. 2017); *Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017). We review findings of fact under the substantial-evidence standard. *See Ting Xue*, 846 F.3d at 1104. Under that deferential standard, "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Garland v. Ming Dai*, 593 U.S. 357, 368 (2021) ("The only question for judges reviewing the BIA's factual determinations is whether *any* reasonable adjudicator could have found as the agency did," in other words, "whether the agency's finding qualifies as one of potentially many reasonable possibilities.").

## A. *Due Process*

Petitioners argue the agency denied them due process. Noncitizens facing removal "are entitled only to procedural due process, which provides the opportunity to be heard at a meaningful time and in a meaningful manner." *Schroeck v. Gonzales*, 429 F.3d 947, 952 (10th Cir. 2005) (quotations omitted). "To prevail on a due-process challenge, the petitioner must show prejudicial error." *Matumona v. Barr*, 945 F.3d 1294, 1308 (10th Cir. 2019). Petitioners must show their "rights were violated in a manner so as potentially to affect the outcome of the proceedings." *Lucio-Rayos*, 875 F.3d at 577 (quotations omitted).

---

8 U.S.C. § 1252(b)(4)(A). We therefore do not consider the documents attached to Petitioners' opening brief or the arguments based on those documents.

1. **Expedited Docket**

Petitioners argue the agency violated due process by placing their case on an expedited docket. Before the Board, they asserted the expedited docket prevented Ms. Sanchez Mayorga from obtaining counsel and securing evidence in time for her IJ hearing. The Board found the Petitioners had not shown prejudice because they had not described what efforts were made to obtain counsel or what evidence would have been submitted with more time.

The bulk of Petitioners' argument here rests on information outside the administrative record, which we cannot consider. 8 U.S.C. § 1252(b)(4)(A). Petitioners repeat that they lacked sufficient time to obtain counsel and secure evidence. But they do not contest the Board's determinations that they failed to identify what efforts Ms. Sanchez Mayorga made to secure counsel or what evidence she would have submitted.[3] Because they have not shown prejudice, Petitioners have not shown the Board erred.

2. **Addendum Reciting Legal Standards**

Petitioners assert the IJ failed to apply the relevant law because the IJ appended a "generic statement of law" to her decision, "mak[ing] it impossible for

---

[3] In addition, the IJ recognized that Ms. Sanchez Mayorga was attempting to secure evidence or translate evidence she already had. But the IJ found her credible and thus deemed it unnecessary to require evidence to bolster her testimony, a determination that undermines any inference that the expedited docket potentially affected the outcome of the proceeding.

any appellate body to provide meaningful review." Pet'rs' Opening Br. at 11-12. The Board concluded the IJ applied the proper legal standards.

Petitioners seem to argue that because the IJ's decision cited legal standards only in the addendum, the IJ did not apply the law to the facts. But the IJ cited legal authority in her discussion of whether any persecution was on account of membership in a PSG, *see* R. at 84-85. Also, the Board was able to ascertain and evaluate the IJ's reasoning. Petitioners fail to show prejudice.

3. **Failure to Inform of a Potential Avenue of Relief**

Petitioners argue the IJ failed to tell them that John Doe might be eligible for Special Immigrant Juvenile Status ("SIJS"). The Board solicited supplemental briefing on this issue, questioning whether John Doe had filed a petition for SIJS. Petitioners did not respond, and the Government informed the Board that it found no record of an SIJS petition. The Board concluded Petitioners failed to show prejudice.

Petitioners contend that the Board improperly "released" the IJ "from the duty of advising the petitioners of possible eligibility for relief from removal" because "such a dismissal of the IJ's obligations does not exist under the law." Pet'rs' Opening Br. at 12. This argument ignores that Petitioners must show prejudice to establish a due process violation. *See Matumona*, 945 F.3d at 1308; *Lucio-Rayos*, 875 F.3d at 576. Even assuming the IJ had a duty to inform them about SIJS, Petitioners did not explain to the Board how this affected the outcome of the IJ proceedings. *See Lucio-Rayos*, 875 F.3d at 577. In particular, they did not demonstrate a reasonable likelihood that John Doe would have obtained SJIS relief.

*See United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004) (to succeed with a due process claim, petitioner must show "there is a reasonable likelihood that [he] would have obtained relief from deportation had the IJ advised him more specifically"). The Board therefore did not err.

## B. *Asylum*

### 1. **Legal Background**

To qualify for asylum, an applicant must be a "refugee," 8 U.S.C. § 1158(b)(1)(A), (B)(i)—"unable or unwilling to return" to her country of nationality or habitual residence "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," *id.* § 1101(a)(42). "These five categories are called 'protected grounds.'" *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015).

"To show persecution or fear of persecution on account of a protected ground, an applicant must establish a nexus between the alleged persecution and a protected ground." *Miguel-Pena v. Garland*, 94 F.4th 1145, 1159 (10th Cir.) (citation and quotations omitted), *cert. denied*, 145 S. Ct. 545 (2024). "The protected ground must be 'at least one central reason for persecuting the applicant.'" *Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). "It cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (brackets and quotations omitted).

### 2. **IJ and Board Decisions**

Before the IJ, Ms. Sanchez Mayorga claimed harm on account of a membership in a PSG. The IJ said that Ms. Sanchez Mayorga described the group as

"a domestic relationship." R. at 85. Before the Board, Petitioners argued the IJ failed to fully develop the record and improperly "failed to consider a gender-based asylum claim or an asylum claim based on an inability to leave a domestic relationship." R. at 20. They asserted the IJ should have considered the social groups of "Colombian women" and "Colombian women in a domestic relationship they are unable to leave." R. at 23 (quotations omitted).

In response, the Board noted that the IJ asked Ms. Sanchez Mayorga about her relationship with Juan and his motivations for harming her. It found that Ms. Sanchez Mayorga's testimony did not tie Juan's conduct to gender or inability to leave. The Board therefore concluded the IJ "adequately developed the record and did not err in declining to consider any social group claims based on gender or inability to leave." R. at 4. It also said Petitioners did not establish that Ms. Sanchez Mayorga belonged to the group "Colombian women in a domestic relationship they are unable to leave": "[She] testified that she and her former partner separated in 2018, that she thereafter entered a new relationship, and that she did not have any contact with her former partner from the end of 2018 through the time she left Colombia in 2022." *Id.*

3. **Petitioners' Arguments**

Petitioners present two arguments here. First, they reassert that the IJ failed to develop the record. This court has not "explicitly recognized" that "an IJ has an affirmative duty to develop the record when the applicant is not represented." *Matumona*, 945 F.3d at 1303-04; *see also Arostegui-Maldonado v. Garland*, 75 F.4th

9

1132, 1147 (10th Cir. 2023), *abrogated on other grounds by Riley v. Bondi*,

145 S. Ct. 2190 (2025).  But even assuming such a duty, Petitioners must show the

allegedly insufficient "development of the record was prejudicially inadequate."

*Matumona*, 945 F.3d at 1304.  They have not done so.

Petitioners contend that "the IJ failed to consider a gender-based asylum claim

or an asylum claim based on inability to leave a domestic relationship."  Pet'rs'

Opening Br. at 9; *see also id.* at 10 ("The immigration judge, being aware of the facts

and the binding legal precedent that governs their decisions, had a duty to determine

whether these facts fall within the grounds for asylum by considering the facts before

them as applied to the legal precedent.").  But the Board considered the potential

applicability of those PSGs and, like the IJ, concluded that the evidence did not

support a finding of persecution on account of membership in such groups.  Because

the Board analyzed the groups, Petitioners have not shown the IJ's alleged failure to

develop the record was prejudicial.[4]

Second, Petitioners also argue that the Board erred in upholding the IJ's

determination that Ms. Sanchez Mayorga failed to establish persecution on account of

---

[4] Relatedly, Petitioners argue the Board erred "in failing to consider binding case law in the Tenth Circuit that establishes that gender and nationality can be sufficient for particular social group membership and that the Board has recognized inability to leave a domestic relationship as sufficient for particular social group membership."  Pet'rs' Opening Br. at 13.  But this suggests the Board declined to recognize the PSGs of "Colombian women" and "Colombian women in a domestic relationship they are unable to leave."  It did not decline to do so.  Instead, it determined the IJ did not err because the evidence did not support a finding that Juan harmed Ms. Sanchez Mayorga on account of membership in them.

membership in a PSG.  They say the record shows a nexus to a protected ground.

We review nexus for substantial evidence, *see Miguel-Pena*, 94 F.4th at 1159,

and substantial evidence supports the finding that Juan did not harm

Ms. Sanchez Mayorga on account of a membership in a PSG.  Instead, she testified

that Juan is violent and physically punishes people when he is angry, jealous, and/or

drunk.  *See Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) (stating that

"acts of common criminality or personal hostility . . . do not implicate asylum

eligibility").[5]

## C.  *Withholding of Removal*

Because Ms. Sanchez Mayorga failed to qualify for asylum, she also failed to

satisfy the higher standard for withholding of removal.  *See Rodas-Orellana*,

780 F.3d at 987 ("Failure to meet the burden of proof for an asylum claim necessarily

forecloses meeting the burden for a withholding claim.").

---

[5] To the extent that Ms. Sanchez Mayorga suggests that the Board failed to analyze whether Juan acted from mixed motives, the argument is waived as insufficiently briefed.  *See Arostegui-Maldonado*, 75 F.4th at 1147 ("Cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to preserve an issue for appellate review." (brackets and quotations omitted)).

Because we uphold the Board's decision based on lack of nexus, we need not consider the Board's other reason for upholding the denial of asylum and withholding of removal—that Ms. Sanchez Mayorga failed to show that the government of Colombia was unable or unwilling to protect her.

D. *CAT Relief*

Finally, Petitioners argue the Board erred in finding they failed to establish CAT protection eligibility. "Article 3 of the Convention Against Torture prohibits the return of an alien to a country where it is more likely than not that [s]he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (brackets and quotations omitted). "A claim under the CAT differs from a claim for asylum or withholding of removal . . . because there is no requirement that the petitioner[] show that torture will occur on account of a statutorily protected ground." *Id.* (quotations omitted).

The IJ found that Ms. Sanchez Mayorga had not shown that she or John Doe faced a clear probability of torture that the Colombian government would ignore. Because she never reported Juan's physical abuse to the authorities, the IJ could not "conclude, based on the evidence in the record and in the country conditions report, that her government would turn a blind eye to any serious harm rising to the level of torture that Juan could inflict on her or her son if they return to their country." R. at 88. The Board concluded that Petitioners had not shown clear error.

Substantial evidence supports the Board's decision. Juan was not a public official, nor did he act at one's direction. And there was no evidence of an official's acquiescence of torture because Ms. Sanchez Mayorga did not inform the authorities in Colombia about Juan's physical abuse. Petitioners point to the police's failure to investigate when she reported the apartment burglary, but she has not shown that the

12

burglary involved torture or that the failure to investigate would be acquiescence in torture. *See* 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."); § 1208.18(a)(7) ("Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity. Such awareness requires a finding of either actual knowledge or willful blindness.").[6]

## III. **CONCLUSION**

We (1) deny the petition for review, (2) grant Petitioners' motion to proceed without prepayment of costs and fees, (3) grant the Government's motion to strike in part by striking the documents attached to Petitioners' opening brief, and (4) deny Petitioners' request to take judicial notice of information outside the administrative record. *See* 8 U.S.C. § 1252(b)(4)(A).

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[6] In challenging the denial of CAT relief, Petitioners again complain that the IJ attached an addendum containing legal standards to her decision. They fail to show prejudice. The Board had no difficulty identifying the grounds for the IJ's denial of CAT relief, and neither do we. Petitioners' assertion that "the absence of legal analysis by the IJ as applied to the facts of the case leaves no room for in-depth argument by the petitioners," Pet'rs' Opening Br. at 23, lacks merit.